[L. A. No. 5894. In Bank.—February 17, 1922.]

THE FIDELITY AND CASUALTY COMPANY OF NEW YORK (a Corporation), Appellant, v. THE PARAFFINE PAINT COMPANY (a Corporation), et al., Respondents.

[1] NEGLIGENCE—DEATH FROM EXPLOSION OF ROOF COATING—AGENCY —INSTRUCTION.—In an action for death from the explosion of roof coating, which it is alleged in the complaint defendants negligently represented was nonexplosive, there was no error in instructing the jury that if it should find from the evidence that the roof coating was sold to a certain party through a certain salesman and that the salesman was acting exclusively as the employee of a company other than one of the defendants, no liability for the accident could be imputed to any person or company other than that company, as a matter of law, and therefore it would become the jury's duty in such circumstances to return a verdict for the defendants, it being contended that the evidence was uncontradicted that the salesman was employed by the company in question and the salesman having testified that he did not actually sell the article. It was for the jury to determine by whom the salesman was employed and whether or not he was the one through whom the article was sold.

[2] ID.—ASSUMPTION OF FACT IN INSTRUCTION.—Such instruction does not assume that the agent in question sold the roof coating where it opens with the formula, "If you find from the evidence," and the jury is plainly told to decide whether or not the sale was made through the salesman in question, and if it finds the sale was

so made, to consider whether or not, in making the sale, the salesman was acting as agent for the company in question.

[3] ID. — REPRESENTATIONS AS TO NONEXPLOSIBILITY. — Objection to such instruction on the ground that in directing a verdict for defendants, if the salesman is found to be the agent of the company in question, it assumes that no representations as to nonexplosibility were made by any employee of defendants or by anyone other than the salesman in question, is not warranted by the terms of the instruction, which relate only to the subject whether or not there was a contractual relation between the purchaser, or his agent who negotiated the purchase, and the defendants, as other instructions which were not objected to fully covered the subject of such representations and supplied the element omitted from this instruction.

[4] ID.—AGENCY.—Such instruction is not objectionable on the ground that it assumes the roof coating was sold by the company other than defendants, leaving out of consideration any agency which may have existed between it and the defendants, where other instructions cover the subject of agency, actual and ostensible, and under them and this instruction the jury could properly have considered whether or not this company or its representatives were acting as agents of the defendants, and could have found for plaintiff even though the salesman himself were acting exclusively as agent for the company other than defendants.

[5] ID.—REPRESENTATIONS—AGENCY—INSTRUCTION.—In such a case an instruction, in effect, that if the jury should find from the evidence that a check issued by the deceased (who was the agent of the purchaser of the roof coating) for the payment of the roof coating was payable to one of the defendant companies, but that the transaction in fact was between the purchaser and a company other than the defendants, and that it was a customary thing for checks for such transactions to be made out to one of the defendant companies, and that if the jury should find in point of fact that the roof coating was sold in the first instance by the defendant company to the company other than the defendants and was thereafter sold by the latter company to the purchaser and the check in question was a form of payment to the latter company and was so treated by the defendant company and the other company, that then the controlling fact would be the character of the transaction as a sale between the purchaser and the company other than the defendant companies, if the jury should find such to be the fact, and in that event it would become the jury's duty to return a verdict for the defendants, is not misleading.

[6] ID. — INSTRUCTION FOR VERDICT FOR PARTICULAR PARTY — INCLUSION OF ALL CIRCUMSTANCES.—While it is true that where instructions conclude with the formula that if the jury find the propositions therein recited to have been established, their verdict should

be for a particular party, each separate instruction so drawn should in itself show all the circumstances which must concur to warrant such a verdict, the failure of the above instruction to cover the subject of false representations, while erroneous, was not prejudicial, although the subject was fully covered in other instructions, where the evidence does not show that any such representations were made by either of the defendants.

[7] ID.—AGENCY—FAILURE TO CHARGE ON.—There was no error in the omission from the instructions of any reference to the subject of agency, where the jury was charged solely upon the hypothesis that the transactions consisted of sales directly between the various parties, as under such circumstances the question of agency was not involved.

[8] ID.—UNDERSTANDING AS TO WHOM BUSINESS WAS DONE FOR—INSTRUCTION.—Such instruction is not open to the objection that the jury should find for the defendants, provided the check given by the purchaser's agent was treated by the defendant company and the company other than the defendants as a form of payment to the latter, regardless of the understanding the purchaser's agent had as to who he was doing business with.

[9] ID.—LACK OF PRIVITY OF CONTRACT — DANGEROUS SUBSTANCES.— In an action for death resulting from an explosion of roof coating, an instruction as to the right of recovery without reference to privity of contract between the parties is not erroneous in omitting all reference to the representations alleged to have been made by the defendants, as to the nonexplosive character of the coating, who it was claimed sold the coating to the deceased, where the subject of such representations is covered by other instructions.

[10] ID.—FRAUDULENT REPRESENTATIONS—NONEXPLOSIBILITY OF COATING—INSTRUCTION.—In such a case it was not error to give an instruction, in substance, that if the jury should find from the evidence that there was no deceitful or fraudulent representation by the manufacturer or seller of the roof coating when the same was sold to the purchaser through his agent, the deceased, whether as to the explosiveness or inflammability of the article in question, the explosion of that article and the consequent injury to the deceased could not, as matter of law, be imputed as a liability to the manufacturer or seller of the article, the instruction omitting all reference to representations negligently made in allowing recovery only in the event that there were representations made fraudulently, but the jury being fully advised in other instructions that negligence of defendants' agents and employees was imputable to defendants and that, if any of them was negligent in the manner alleged in the complaint, respondents would be liable.

[11] ID. — INSTRUCTION OUTSIDE ISSUES. — An instruction in such a case, that "the burden of proof in this case is upon the plaintiff, not upon these defendants. It would be incumbent upon the plaintiff, not upon the defendants, to satisfy your minds by a preponderance of all the evidence in the case, that any deceitful representation touching the explosiveness of the article in question when brought into contact with flame, was made by the manufacturer or seller or by any authorized agent in the premises, and if you should find from the evidence that no such representation has been proved by a preponderance of the evidence, I instruct you, as matter of law, that the case of this plaintiff must fail of proof in respect to such representation, and so far as any such representation in that event is concerned, you would not be authorized in law to return any verdict in this case except a verdict for the defendants," correctly states the law on the subject of the burden of proof, and where there was neither allegation nor proof of any representation that the roof coating was nonexplosive when brought into contact with flame, the instruction was outside the issues.

[12] ID. — BURDEN OF PROOF — INSTRUCTION. — In such a case there was no error in instructing the jury that the evidence must "satisfy your minds," where these words were coupled with the language "by a preponderance of the evidence" and in other instructions "preponderance of evidence" was clearly defined.

[13] ID. — NOTICE OF DANGER — INSTRUCTION. — An instruction in such a case that if it were found the deceased was notified by a label upon the barrels that lighted matches should be kept away therefrom, or if it were found in the exercise of ordinary care he could have seen the label, and, notwithstanding the same, he applied a lighted match to or in the neighborhood of the barrel, and that in so doing he did something which a reasonable and prudent man would not have done, he was guilty of contributory negligence, is not erroneous in using the word "could" instead of "should" with reference to seeing the label, since the use of the latter word would have involved an assumption that the label was on the barrel, whereas the evidence was conflicting on that point.

[14] ID. — LIABILITY OF DEFENDANTS — INSTRUCTION. — In such a case there is no error in instructing the jury in effect that plaintiff has brought its action against two named defendants and that the verdict in the case must depend upon the liability of these two companies, or either of them, and that it cannot be made to depend upon the liability of any company or person not a party to the action, and that if the jury should find from the evidence that the transaction in suit, namely, the purchase of the roof coating in question, was a transaction between the purchaser through his employee upon the one hand, and some company or

person other than the defendants upon the other hand, no liability for the accident can be imputed to either of the defendants and the verdict should be for them.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frederick W. Houser, Judge. Affirmed.

The facts are stated in the opinion of the court.

R. P. Jennings for Appellant.

Kemp, Mitchell & Silberberg, Morrison, Dunne & Brobeck, and R. L. McWilliams, for Respondents.

LAWLOR, J.—This is an appeal by the plaintiff from a judgment in favor of the defendants in an action to recover damages in the sum of fifty thousand dollars for the death of one Charles Perry Whitaker. In the early part of 1917 Whitaker was employed by Isaias W. Hellman as manager of the I. W. Hellman Building, in the city of Los Angeles. Appellant had issued to Hellman a policy of insurance against liability for injuries received by his employees under the Workmen's Compensation, Insurance and Safety Act (Stats. 1917, p. 831). The two respondent companies and the E. G. Judah Company at that time had their offices together, although the Judah Company was not actually connected with the other two. The Judah Company, which was subsequently absorbed by the respondent Atlas Factories Company, had a contract with respondent Paraffine Paint Company for the marketing of the latter's products.

Whitaker, as Hellman's agent, purchased several barrels of "Malthoid Roof Coating," but the evidence is in conflict as to whether it was purchased from the respondent companies or from the Judah Company. The evidence discloses, however, that Whitaker first telephoned the offices of the Paraffine Paint Company and asked to speak to someone with regard to roof painting. T. A. Dolph, a salesman employed by the Judah Company, came to his office the following day and discussed the purchase with him. Later Whitaker, according to the testimony of L. L. White, who was present at the time, called up the office of the Paraffine Paint Company and asked to speak to the man "who was up here talking to me in regard to this roof paint." In the

conversation which followed, Whitaker, according to White, said: " 'Are you the man who was up this morning, or yesterday, speaking to me about this roof paint?' Then he says, 'All right, I want a price on that now on barrel lots.' And he says, 'What? Sixty cents!' . . . He says, 'I won't accept it at sixty cents. You quoted me fifty-five, and that is all I will pay for it.' " The purchase was made and the check in payment for it was drawn by Whitaker to the order of the Paraffine Paint Company. It was shown that the delivery receipts for the roof coating were headed "Received from E. G. Judah Co., Special Representatives The Paraffine Paint Company." The receipted bills for the purchase price were on the stationery of the "Atlas Factories Company, The Paraffine Paint Company, owner."

One barrel of the material was put in a room on the sixth floor of the I. W. Hellman Building. On May 15, 1917, about fifteen gallons of the roof coating remained in that barrel. Whitaker and C. B. Allison, head janitor of the building, started to drain the contents into a bucket in order to carry it to the paint-shop. The barrel was on its side, the ends resting on two boxes, the roof coating being allowed to run out through the bung-hole into the bucket. Allison struck a match to see how full the bucket was. The match went out and he threw it on the cement floor. There is evidence indicating that another match was struck. The roof coating exploded, inflicting the injuries from which Whitaker subsequently died. Allison received injuries of a serious nature.

Compensation was awarded by the Industrial Accident Commission for Whitaker's death. Part of such compensation was paid by appellant, who thereupon instituted this suit under the subrogation provisions of the Workmen's Compensation, Insurance and Safety Act. The complaint alleged that Whitaker purchased the roof coating from respondents; that respondents carelessly, negligently, recklessly, and wantonly represented that it was nonexplosive and failed to warn him that it was explosive; that the Malthoid Roof Coating was of an explosive and dangerous character, liable to cause injury to the public, including Whitaker; and that these facts were known to respondents. The answer denied the allegations of the complaint, and by way of separate defense alleged Whitaker's death arose out of his own contributory

negligence. The case was tried by jury, which returned a verdict in favor of respondents. Judgment was accordingly entered. Appellant's motion for a new trial was denied, and this appeal is taken.

[1] 1. Appellant relies for a reversal of the judgment upon several alleged erroneous instructions. The first of these is instruction F, which reads: "If you should find from the evidence that the roof coating in question was sold to I. W. Hellman, through T. A. Dolph as salesman, and that T. A. Dolph, in the transaction, was acting exclusively as the employee and agent of the E. G. Judah Company, then I instruct you that no liability for the accident can be imputed to any person or company other than the E. G. Judah Company, as matter of law, and therefore it will become your duty in such circumstances to return a verdict for the defendants." Appellant asserts that since the evidence was uncontradicted that Dolph was employed by the Judah Company, the jury under this instruction would necessarily assume that under no circumstances could liability attach to any person or company other than the Judah Company. It insists that there was no evidence upon which to base the instruction, inasmuch as Dolph testified he did not actually sell the article. Notwithstanding Dolph's testimony it was for the jury to determine by whom he was employed, and whether in this transaction he acted exclusively as the employee and agent of the Judah Company. Moreover, from the testimony set forth above, the jury could have decided that, while the order for the roof coating might not have been actually placed with Dolph, he at least was the salesman through whom it was sold, and with whom Whitaker negotiated for its purchase. It follows that there was evidence upon which to base the instruction.

[2] Appellant also insists the instruction assumes that Dolph sold the roof coating. It will be noted that the instruction opens with the formula, "if you should find from the evidence," and the jury was plainly told to decide whether or not the sale was made through Dolph, and if it found the sale was so made, to consider whether or not, in making the sale, Dolph was acting as agent for the Judah Company.

[3] It is also asserted that the instruction, in directing a verdict for respondents if Dolph were found to be the agent

of the Judah Company, assumes that no representations as to nonexplosibility were made by any employee of respondents or by anyone other than Dolph.  Such a conclusion is not warranted by the terms of this instruction, which relate only to the subject of whether or not there was a contractual relation between Hellman or Whitaker and respondents.  In Instructions K and R, to which appellant did not object, and in instruction L the subject of the said representations was fully covered.  These instructions supplied this element, which appellant claims is omitted from instruction F.

[4]  Appellant also claims the instruction assumes the roof coating was sold by the Judah Company, leaving out of consideration any agency which may have existed between the Judah Company and respondents.  In instructions R, T, U, W, and X the subject of agency, actual and ostensible, was fully covered, and under them the jury could properly have considered whether or not the Judah Company or its representatives were acting as agents of respondents.  Under these instructions, taken in conjunction with instruction F, the jury could have determined whether or not the Judah Company was respondents' agent, and if it concluded such was the case, could have found for appellant even though Dolph himself were acting exclusively as agent for the Judah Company.

[5]  2. The next assignment of error is to instruction G, which is as follows: ''If you should find from the evidence that the check issued by Whitaker for the payment of the roof coating in question was payable to the Paraffine Paint Company but that the transaction in fact was between Hellman and the E. G. Judah Company, and that it was a customary thing for checks for such transactions to be made out to the Paraffine Paint Company, and if you should find in point of fact that the roof coating was sold in the first instance by the Paraffine Paint Company to the E. G. Judah Company and was thereafter sold by the E. G. Judah Company to Hellman, and that the check in question was a form of payment to the E. G. Judah Company and was so treated by the Paraffine Paint Company and the E. G. Judah Company, then I instruct you that the controlling fact would be the character of the transaction as a sale between Hellman and the E. G. Judah Company, if you find such to be the fact, and in that event it becomes your duty to return a verdict for the defendants.''

This instruction is complained of upon the ground that it is involved and misleading; that it leaves out of consideration the matter of representations as to the nonexplosibility of the roof coating by other agents of the respondents; and that it also leaves out of consideration the question of ostensible agency. We do not think that, fairly interpreted, this instruction can be held to be involved or misleading. [6] With reference to appellant's second contention, it is true that where instructions conclude with the formula that if the jury find the propositions therein recited to have been established, their verdict should be for a particular party, each separate instruction so drawn should in itself show all the circumstances which must concur to warrant such a verdict. (*Killelea* v. *California Horseshoe Co.*, 140 Cal. 602 [74 Pac. 157]; *Pierce* v. *United Gas & Electric Co.*, 161 Cal. 176, 184 [118 Pac. 700]; *Starr* v. *Los Angeles Ry. Corp.*, 187 Cal. 270 [201 Pac. 599].) In the instruction in question the jury were told that if certain facts were found to be true, their verdict should be for respondents. The instruction, however, did not cover the subject of false representations and was therefore incomplete. It being conceded respondents were liable if any false representations were made by them, the omission of that element from the instruction was erroneous. However, the failure of the trial court to include this matter could not have prejudiced appellant for the reason that, although that subject was fully covered in other instructions, the evidence does not show that any such representations were made by either of the respondents. The only testimony in that regard, in addition to that already referred to, was to the effect that Whitaker was overheard calling the Paraffine Paint Company on the telephone; that he was overheard conversing with some man who told him the Malthoid roof coating was nonexplosive, but who was in no way connected up with respondents; that Whitaker later called up the Paraffine Paint Company and gave orders to deliver the roof coating, but said that "If it is explosive I do not want it in the building." On the other hand, it was stipulated that if the telephone operator at the office of respondents were called as a witness she would testify she had no recollection of any conversations such as were testified to by appellant's witnesses. There is no evidence as to the statements made to Whitaker by the parties with whom

he talked over the telephone. It may well have been that if any representations were made to Whitaker, they were merely, as respondents now claim, that the paint was non-explosive, but that it should not be brought into contact with lighted matches. In view of this lack of evidence as to any representations by respondents, the error in omitting the subject from the instruction must be regarded as harmless.

[7] There is no error in the omission from the instruction of any reference to the subject of agency, for the jury were charged solely upon the hypothesis that the transactions consisted of sales directly between the various parties. Under such circumstances the question of agency was not involved.

[8] It is also asserted by appellant that the instruction means the jury must find for the respondents, provided the check given by Whitaker was treated by the Paraffine Paint Company and the E. G. Judah Company as a form of payment to the latter, regardless of the understanding Whitaker had as to who he was doing business with. The instruction conveyed to the jury the meaning that if the transaction were treated by the respondent companies and the Judah Company as a sale between Hellman and the latter company, then the controlling proposition would be whether or not there was a sale between Hellman and the Judah Company, and if the jury so decided, it would find for the respondent companies. In deciding the latter question the jury would naturally have considered whether or not Whitaker thought he was dealing with the Judah Company or the Paraffine Paint Company.

[9] 3. Error is assigned to instruction J, which declares: "It is true, as matter of law, that cases may arise in which, without privity of contract, breach of duty arising as matter of law may be imputed to a defendant: That is to say, if the defendants or either of them, as matter of fact, sold the roof coating in question to Hellman through his agent Whitaker and such roof coating was used by Whitaker in the business of his employer, a cause of action would arise in favor of Whitaker or his representative without reference to privity of contract and upon the basis of a duty imposed by law, if as matter of law this is a case where such breach of duty has been established. But in that connection I instruct you as the law that such breach of duty as between

188 Cal.—13

the seller of merchandise and the purchaser will not arise in favor of a third person such as Whitaker would be, unless the accident happened through the character of the substance sold as being imminently dangerous to human life under circumstances where the third person, like Whitaker, was injured because of the imminently dangerous character of the substance without knowledge on his part of such imminently dangerous character and where he himself was not guilty of contributory negligence proximately related to the accident in question.''

It is asserted that this instruction is erroneous in omitting all reference to the representations alleged to have been made by the respondents, who it was claimed sold the roof coating in question to Whitaker, inasmuch as a cause of action would arise in favor of Whitaker if the negligent representations were made, regardless of whether or not the roof coating was imminently dangerous to human life. This instruction, referring to recovery without privity of contract, immediately follows and supplements one to the effect that Whitaker could not recover for negligence arising out of contract if the contract were between Hellman and another, in which case there would be no privity of contract between Whitaker and the vendor of the roof coating. It correctly states the rule of recovery in cases where there is no privity of contract, but where the substance is imminently dangerous to life or limb, and there was no error in giving it. It was unnecessary to include the subject of representations, that point, as we have shown, being covered by other instructions.

[10]    4. Instruction L is also complained of. This instruction reads: ''If you should find from the evidence in this case that there was no deceitful or fraudulent representation by the manufacturer or seller of the roof coating when the same was sold to Hellman through his agent Whitaker, whether as to the explosiveness or inflammability of the article in question, then I instruct you that the explosion of that article and the consequent injury to Whitaker cannot, as matter of law, be imputed as a liability to the manufacturer or seller of the article.'' It is claimed that this instruction omits all reference to representations negligently made, and allows recovery only in the event that there were representations made fraudulently. In instruction R, as

already pointed out, the jury was fully advised that negligence of respondents' agents and employees was imputable to respondents, and that if any of them was negligent in the manner alleged in the complaint, then respondents would be liable.  The negligence alleged in the complaint was in the making of representations as to the explosibility of the roof coating.  It was not necessary for the court to include this subject in both instructions.

[11]  5. Appellant assigns error to instruction M, which states that "The burden of proof in this case is upon the plaintiff, not upon these defendants.  It would be incumbent upon the plaintiff, not upon the defendants, to satisfy your minds by a preponderance of all the evidence in the case, that any deceitful representation touching the explosiveness of the article in question when brought into contact with flame, was made by the manufacturer or seller or by any authorized agent in the premises, and if you should find from the evidence that no such representation has been proved by a preponderance of the evidence, I instruct you, as matter of law, that the case of this plaintiff must fail of proof in respect to such representation, and so far as any such representation in that event is concerned, you would not be authorized in law to return any verdict in this case except a verdict for the defendants."

[12]  Exception is first taken to the language of the court in telling the jury that the evidence must "satisfy your minds."  In the case of *Boa* v. *San Francisco etc. Terminal Rys.*, 182 Cal. 93 [187 Pac. 2], in discussing an instruction that the defendant must establish the fact of contributory negligence to "the satisfaction" of the jury, the court said: "This court has repeatedly decided that an instruction that in substance informs the jury that a party having the burden of proof as to a certain fact or issue must establish it to the satisfaction of the jury by a fair preponderance of the evidence is not reversible error, where the other instructions in the case clearly define what is meant by a preponderance of the evidence and distinctly advise them that a preponderance of the evidence will be sufficient to justify a finding in favor of the party having the burden.  In such cases it is held that the words 'to the satisfaction of the jury' are equivalent to 'find' or 'believe.' "  It will be noted that in the case at bar the phrase "satisfy your minds," was

coupled with the language "by a preponderance of all the evidence." In addition to this, in instructions N, O, P, and Q "preponderance of evidence" was clearly defined. This instruction, therefore, comes within the rule of the case last cited and is not erroneous.

It is also insisted that by this instruction the burden is thrown on appellant of proving a representation that the roof coating was nonexplosive when brought into contact with flame, whereas the only representation claimed was that it was nonexplosive generally. This hypothetical instruction correctly states the law on the subject of the burden of proof, but since there was neither allegation nor proof of any representation that the roof coating was nonexplosive *when brought into contact with flame,* the instruction was outside the issues. (See *Robinson* v. *Western Pac. R. R. Co.,* 48 Cal. 409, 425.) However, the jury were not charged that such a representation must be proved or a verdict returned for respondents. The instruction merely informed the jury that in so far as any such representation was concerned the burden of proof was on appellant, and that if no such representation was established by a preponderance of evidence, appellant's case must fail *in that respect.* Instructions N, O, P, and Q also related to the burden of proof and correctly stated the law upon that subject. Instruction R also charged that if respondents were found to be negligent as alleged in the complaint, that is, in the matter of making representations that the roof coating was nonexplosive, and such representations proximately caused Whitaker's death, respondents were liable. Inasmuch as the jury could only have found that no representations concerning explosibility of the roof coating when brought into contact with flame were made, the instruction in question could not have prejudiced appellant, since it was based upon that proposition only.

Appellant also contends that the words "authorized agent in the premises" mean a specific authorization to make the particular representations. With reference to these words, the subject of actual and ostensible agency was fully covered in another instruction, and in the light of that instruction the words could not have meant the specific authorization to make the particular representations, but merely the author-

ization, actual or implied, to negotiate for the sale of the roof coating.

[13]   6. Instruction D is claimed to be erroneous. This instruction charged the jury: "If you find from the evidence that the barrels of roof coating in question were used and handled by Whitaker and that in the using and handling of the same, he was notified by a label upon the barrels themselves that lighted matches should be kept away from such barrels, or if you find that in the exercise of ordinary care he could have seen and informed himself of such notice and caution; and if, notwithstanding the same, he applied a lighted match to or in the immediate neighborhood of such barrel with the resulting explosion and injuries, and that in so doing he did something which a reasonable and prudent man under all the circumstances would not have done, I instruct you as a matter of law that such conduct upon his part would be negligence, and if such negligence contributed proximately to bring about this explosion and the injury to Whitaker, there can be no recovery for the plaintiff in this case and your verdict must be for the defendants."

The asserted error lies in the use of the word "could," instead of "should," when defining ordinary care on Whitaker's part in seeing or failing to see the label. We think it is clear there is no error in this instruction. The use of the word "should" would have involved an assumption that the label *was* on the barrel, whereas the evidence on that point is conflicting. In the form in which it was given the instruction presents two questions—first, whether there was a label on the barrel which Whitaker could have seen in the exercise of ordinary care; second, whether, under such circumstances, the striking of the match was the act of a reasonable man. A consideration of the second question necessarily involves the consideration of whether, if the label could have been seen, he should have seen it, acquainted himself with its contents, and acted accordingly. The instruction, in effect, covers the ground contended for by appellant.

[14]   7. Appellant's last assignment of error is to instruction E. This instruction states that "In this case the plaintiff has brought its action against two defendants, namely, The Paraffine Paint Company and Atlas Factories Company. I instruct you that your verdict in this case must depend upon the liability of these two companies, or either of them, and

it cannot be made to depend upon the liability of any company or person not a party to this case. If, therefore, you should find from the evidence that the transaction in suit, namely, the purchase of the roof coating in question, was a transaction between I. W. Hellman, through his employee Whitaker upon the one hand, and some company or person other than the defendants upon the other hand; that is to say, if you should find from the evidence that the real transaction here was the purchase of some roof coating by I. W. Hellman from E. G. Judah Company, then I instruct you, under the facts in this case, that no liability for the accident can be imputed either to the Paraffine Paint Company or to Atlas Factories Company and in event you so find your verdict should therefore be for the defendants.''

It is insisted the instruction is erroneous in that it draws attention to the real transaction, i. e., a sale from the Judah Company to Hellman, leaving the apparent transaction, i. e., the assumed fact that Whitaker thought he was purchasing the roof coating from respondents; and in that it states that no matter what representations might have been made by respondents' agents, if the sale were actually made from the Judah Company to Hellman, appellant could not recover.

As we pointed out in considering the objections to instruction G, the jury, in determining whether or not there was a sale between the Judah Company and either Hellman or Whitaker, would naturally have considered whether or not Whitaker thought he was dealing with the Judah Company. As to the second point, it is sufficient to repeat that the lack of evidence on the subject of representations rendered harmless the omission of that subject from the instruction.

We are of the opinion that there was no error in the instructions as a whole.

The judgment is affirmed.

Wilbur, J., Sloane, J., Shurtleff, J., and Shaw, C. J., concurred.

Rehearing denied.

All the Justices concurred.