[Civ. No. 714. Fourth Appellate District.—May 9, 1931.]

CILLION E. SALE, Appellant, v. ILLINOIS ELECTRIC COMPANY (a Corporation) et al., Respondents.

DORIS KENNARD, Appellant, v. ILLINOIS ELECTRIC COMPANY (a Corporation) et al., Respondents.

Gretchen G. Wellman, Bertrand J. Wellman and J. J. McCarthy for Appellants.

Joe Crider, Jr., for Respondents.

BARNARD, P. J.—These two cases were consolidated for trial, and this appeal is prosecuted from a judgment in favor of the defendants in each case. Each is an action for damages for personal injuries. Some time around 11 o'clock on the night of March 3, 1928, the respective plaintiffs were riding along a paved highway a short distance west of Santa Monica, in a Cadillac touring car with what is known as a California top. The car was driven by one Jenkins, and owned by one Phillips who sat in the front seat with a Mrs. Bowker between him and the driver. The plaintiffs occupied the rear seat. As this car proceeded west along the highway, some sort of collision occurred between it and a Dodge coupe owned by the defendant Illinois Electric Company and driven by defendant Thornburgh, which was proceeding east along the same highway. The Cadillac overturned, resulting in serious injuries to the plaintiffs. As practically all of the points raised by appellants relate to instructions given and refused, it will be necessary to briefly review the evidence.

At the point of the accident, the highway was paved to a width of twenty feet. To the north of the pavement was a dirt shoulder eight feet wide, and then a bluff. To the south of the pavement was a similar shoulder twelve feet in width, and beyond that was the Pacific Ocean. Witnesses testified that there was a long sweeping curve where the

accident took place, but a map in evidence, drawn to scale, shows that the curve was very slight at and near the point of impact. Some of the occupants of the Cadillac testified that that car was proceeding west on its right side of the road, when they observed defendants' car coming east on the north side of the road, and approaching them head-on. They further testified that the driver of the Cadillac turned his car to the right; that when the right wheels of the Cadillac were three feet north of the pavement, the front of defendants' car struck the left rear side of their car, pushing the rear end of the car into the bank and causing it to proceed across the road to the south, where it turned over. The driver of the Cadillac testified that he pulled to the right off the paved road, in an attempt to avoid the collision. The owner of that car testified that he first observed that Jenkins was running too near the bluff and that he told him to pull over; that as they proceeded he saw the Dodge car apparently approaching them head-on, and thereupon the driver again pulled to the right; and that the Dodge struck the Cadillac when only the left wheels of that car were on the pavement. Four acquaintances of these parties in the Cadillac were riding in another car proceeding in the same direction, about 150 feet in advance of the Cadillac. A lady who was in that car testified that the defendants' car crowded their car into the bank before reaching the car in which the plaintiffs were riding. On the other hand, the other three occupants of that car did not corroborate this, and the driver of that car testified that he did not even see the Dodge prior to the collision.

The defendant Thornburgh testified that he saw the Cadillac coming toward him, zigzagging across the street; that it made two swerves from the north to the south side of the road before it hit his car; that he pulled to his right and had come to a stop, entirely off the pavement, when his car was struck; that on its second swerve the Cadillac hit the left front of his car; that it then cut in and turned over; and that as the Cadillac raised in turning, its rear left fender hit the radiator of his car. The evidence shows, without dispute, that immediately after the accident the Dodge car stood upright on the south side of the road, either entirely off the pavement or with its left rear wheel slightly on the pavement, and facing east, in the direction

in which Thornburgh had been traveling. The Cadillac, with all four wheels in the air, lay at an angle across the highway, just to the north of the Dodge, with only a foot and a half or two feet between the two cars, and with its front end pointing toward the ocean. None of the witnesses on either side testified that any portion of the Cadillac was any farther west than the rear of the Dodge. The front end of the Cadillac showed no injury, but the top was a complete wreck, while the left side was considerably damaged. The principal damage to the Dodge was at the left front of the car, while a deep indentation, in a straight line, appeared completely across the radiator of the Dodge, near its top. The plaintiff Kennard was thrown to the ground, being found partially on the pavement and partially under the left front wheel of the Dodge. As we understand the evidence, the plaintiff Sale was taken from underneath the rear seat of the Cadillac. One of the witnesses testified that he found a broken whisky bottle in the folds of the California top. The wreckage of this top lay in front of the Dodge car but on the pavement, about six feet from the south line thereof. No evidence appears as to any broken glass or other wreckage at any other place than this, and no evidence appears of any skid or other marks from the north to the south side of the road. At least four occupants of the Cadillac testified that that car swerved to the right. The driver of the Cadillac testified that both cars were going at about the same speed, that he was traveling at about eighteen or twenty miles an hour at the time of the impact, and that his car swerved to the right, then swerved again and turned over. Doris Kennard testified that she felt the car swerve to the right and turn completely to the left. Plaintiff Sale testified that he did not see the Dodge car before the accident happened; that the Cadillac swayed twice before the accident occurred; and that "it swerved to the left toward the center of the road, as I thought. In other words, toward the ocean. Then it made another quick swerve in back toward the embankment and as it made that swerve it just seemed as quick as the car righted itself around that-a-way it tipped over." A careful reading of the testimony of these witnesses strongly corroborates the statement of defendant Thornburgh that the Cadillac swerved to the south side of the road before the collision

occurred. The position of the cars and the wreckage immediately after indicates that the collision took place on the south side of the road, and that the Cadillac overturned when its driver suddenly turned it toward the north side of the highway. This is supported by the testimony of Phillips that he told the driver to pull over away from the bank, by that of Sale that before the accident the car swerved toward the ocean and tipped over as it swerved back toward the bank, and by that of the other witnesses as to the swerving of the car, as well as by that of Thornburgh. The story told by the plaintiffs' witnesses as to how the accident occurred seems practically impossible, in view of the physical facts. Had the Dodge sideswiped the Cadillac on the north side of the road, its momentum would have taken it on down the road, and the two cars could hardly have been carried abruptly to the south twenty-five or thirty feet and left in the situation in which they were found, and even this, without leaving visible signs of the transition. Phillips' testimony that his car was getting too close to the bluff and that he told the driver to pull over is significant in connection with Sale's testimony that the car swerved to the left toward the ocean, and ''Then it made another quick swerve in back toward the embankment and as it made that swerve it just seemed as quick as the car righted itself around that-a-way it tipped over.'' In any event, this collision was not one where both parties could have been to blame. While the evidence is sharply conflicting as to where the collision occurred, there is no conflict that it occurred either at the extreme north edge of the highway or at the extreme south edge thereof, and, necessarily, the fault lay with either the one driver or the other.

The main ground for reversal urged by the appellants is the refusal of the court to give certain instructions requested by them, with respect to guest, passenger, and imputed negligence rules. The purport of these instructions was that any negligence of which the driver of the Cadillac may have been guilty in the operation of his car could not be imputed to or charged against the plaintiffs. Appellants urge the refusal of these instructions as reversible error, relying upon the case of *Renowden* v. *Pacific Elec. R. Co.*, 73 Cal. App. 383 [238 Pac. 785, 787]. That was a case

growing out of a collision between an automobile and a train of freight-cars at a street intersection. It appears that the plaintiff in that action was riding in the automobile as the guest of the driver thereof. The trial court refused an instruction to the effect that the negligence of the driver of the automobile could not be imputed to the plaintiff. The jury having found in favor of the defendant railroad company, the appellate court held that, under the circumstances, "it is reasonable to infer that the verdict may have rested upon an implied finding that the accident was caused by the concurrent negligence of defendant and the driver Putnam, and that the jury understood that for that reason alone the plaintiff was barred from any right to recover damages". It is fully apparent that under the facts of that case, the jury could reasonably have inferred that the accident was caused by the concurrent negligence of the defendant and the driver of the automobile. This being true, and a number of instructions having been given as to the duty of the driver of the automobile in approaching the defendant's tracks, it was reasonable to infer that the jury did, in fact, impute the driver's negligence to the passenger, and it followed that the failure to give the requisite instruction was prejudicial. A different situation is here presented. Not only is the plaintiffs' evidence, taken in connection with the physical facts, so inherently improbable as to make it difficult to see how the jury could have found the defendant guilty of negligence, but even if it be assumed that they might have done so, there is no evidence that would have justified it in finding concurrent negligence on the part of the drivers of the two automobiles in question. While the evidence is conflicting as to where the collision took place, there is no possible question that it occurred either at the extreme north side of the highway and practically off of the pavement, or in a similar position on the south side of the twenty-foot pavement. The jury was compelled to take either the one or the other view of the evidence, and in doing so, had to find that either the one driver or the other was negligent, but the matter of concurrent negligence of the two drivers was not involved. Since it could not reasonably be inferred that the verdict rested upon an implied finding that the accident was caused by concurrent negligence of the two drivers, and since no

other instructions were given which could have misled the jury in this respect, it is unreasonable to suppose that the jury could have understood that either of the plaintiffs was barred from recovery by any imputed negligence. The instructions in question were not called for under the evidence shown by the record, and their refusal could not have been prejudicial to appellants. As the court said in *Meyers* v. *Southern Pac. Co.*, 63 Cal. App. 164 [218 Pac. 284, 287]: ''Had there been any conflict in the evidence produced by either side as to the relationship of master and servant or that of principal and agent which existed between plaintiff and Torry or with reference to the control of the automobile in which they were riding, which was sufficient in character to indicate a probability of the proper application of the doctrine of imputed negligence, or of the existence of a joint enterprise between them, or among plaintiffs, Torry and Rouden, there might have existed reasonable legal ground for submitting to the jury, under appropriate instructions, the question either of imputed negligence or of joint enterprise. In the light of the presented evidence, any negligence of Torry could not be imputed to plaintiff. Neither was the evidence sufficient to justify the conclusion to the effect that either Torry and plaintiff, or Torry, plaintiff, and Rouden, were engaged in a joint enterprise.''

Appellants further complain of the refusal of the trial court to instruct the jury that there was no evidence that the driver of the Cadillac car was either the agent of either of the plaintiffs or that they were engaged in a common enterprise. It is the fact that no such evidence existed. While the defendants in each of the cases set up in their answer a separate defense, based upon the contention that the plaintiff and the driver of the Cadillac car were engaged in a joint enterprise at the time of the accident, no evidence whatever was introduced by the defendant in support of that defense. While some evidence was brought out by the plaintiffs as to the circumstances under which the parties in the Cadillac car began the trip during which the accident occurred, this evidence falls far short of showing a joint enterprise, and fully establishes that the plaintiffs were simply invited to go for a ride. In *Renowden* v. *Pacific Elec. R.*, *supra*, the court said that in the absence

of any evidence of a joint enterprise or of an agency a plaintiff was entitled to have the jury instructed that such a defense should be disregarded. In this connection the court said: "This error might not be prejudicial, if there had been no instructions given which would probably lead the jury to assume that these alleged defenses were a part of the case submitted for decision. But there was a series of instructions given at the request of the defendant, which, however correct they may be in themselves as statements of law (and as to this we express no opinion), might easily have been applied by the jury in such manner as to hold the plaintiff responsible for negligence of the driver of the automobile, in the absence of any instruction that negligence of the driver could not be imputed to the plaintiff."

In the case before us, no instructions were given which could have led the jury to hold these plaintiffs responsible for any concurring negligence on the part of the driver of the automobile in which they were riding, and, in fact, nothing appears in the record to indicate that such defenses were ever brought to the attention of the jury. Under such circumstances, even if it be assumed that the requested instructions should have been given, the refusal of the same could not have been prejudicial. It seems to us, after reading the instructions and the evidence, that the jury was bound to decide the one question as to which of the drivers was on the wrong side of the road, and that it conclusively appears from their verdict that they found the defendants to be free from negligence.

■ It is next contended that the court erred in refusing to instruct the jury, as a matter of law, that the plaintiffs were not guilty of contributory negligence. The court gave the usual general instructions upon the question of contributory negligence. There was no evidence along the line of agency, common enterprise or imputed negligence. If there was any evidence upon the question of contributory negligence, it was very slight and related only to the acts and conduct of the plaintiffs themselves. The only possible question in this regard would be whether, in view of the evidence as to the manner in which the car in which they were riding had been driven immediately before the accident, the plaintiffs should have made complaint, or have taken other steps to remedy their situation. We are in-

clined to the view that the instruction should have been given, but we think the refusal of the same was not prejudicial. Under the evidence, it is not reasonable to suppose that the jury denied relief to the plaintiffs on the ground of their contributory negligence. A mere reading of the evidence leads irresistibly to the conclusion that the jury must have found the defendants free from negligence. The entire case is one that must have been decided on the question of which driver was on the wrong side of the road.

■ Appellants complain of the following language used by the trial court in beginning its instructions:

"Ladies and gentlemen of the jury, before proceeding, the jurors might think it is peculiar for the court to give certain instructions in each case to the same jurors who have presided in another case.

"All instructions are to be given in all cases by the court, so consequently they will have a repetition of the instructions that were given to you in the other cases on which you have sat in this department."

It is urged that the jury might conclude from this language that instructions that had been given in other cases, although not given in this case, could be considered by them in determining the issues involved in the case on trial. This point is without merit. While the court sought to explain, unnecessarily, that some instructions would be a repetition of instructions given in other cases, no reasonable juror could construe the language used as permitting him to consider instructions used in other cases, unless the same were repeated in the case on trial. After using the language quoted, the judge went on to tell the jury that it was his duty to announce to them the principles of law that were applicable to the instant case, which he then proceeded to do.

■ Complaint is also made of the words "to your satisfaction" in the following instruction: "Before the plaintiffs can recover in this action it must first appear to your satisfaction by a preponderance of the evidence that the defendants—this applies to the defendant corporation, and I will just leave it that way—before the plaintiffs can recover in this action it must appear to your satisfaction by a preponderance of the evidence that the defendant corpora-

tion or its agent, were guilty of some act of negligence which directly and proximately contributed to the accident. It must also appear to your satisfaction that the plaintiff was without fault or negligence on his part, which may in anywise have contributed directly and proximately to the accident.''

However, in another instruction, the court clearly defined what is meant by a preponderance of the evidence, and instructed the jury that such a preponderance is all that is required in a civil action. This was all that was necessary. (*Fidelity etc. Co.* v. *Paraffine Paint Co.*, 188 Cal. 184 [204 Pac. 1076].)

■ Complaint is further made of an instruction which included the following: ''If after considering all of the evidence, you find that the accident might have been caused in several different ways, and you further cannot determine what was the proximate cause of the accident, then your verdict must be for the defendants.''

It is argued that the position of the cars after the accident might have confused the jury as to just how the accident had occurred. The jury were instructed that it was incumbent on the plaintiffs to prove by a preponderance of the evidence that they were injured by the negligence of the defendants, and that this negligence was the proximate cause of such injuries. The portion of the instruction complained of went no farther than the other instruction, which was correctly given.

No other points are raised which require consideration. It is quite apparent from the evidence that the jury did not and could not have found concurrent negligence upon the part of the drivers of the two cars. It is equally apparent that it accepted the evidence to the effect that the collision occurred on the south side of the highway, where the driver of the Cadillac had no right to be. This view is sustained not only by the evidence, but by a great preponderance thereof. The instructions of the court were in the main proper, under the state of the evidence, and in our opinion there was no reversible error.

The judgments are affirmed.

Marks, J., and Jennings, J., concurred.

■

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 5, 1931, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 6, 1931.