[L. A. No. 3778.   Department One.—April 4, 1917.]

# G. L. BRYANT, Respondent, v. PACIFIC ELECTRIC RAILWAY COMPANY, Appellant.

NEGLIGENCE—DRIVER OF AUTOMOBILE—INJURY TO PASSENGER—ERRO-NEOUS INSTRUCTION.—In an action for personal injuries caused by one of the defendant's electric cars colliding with an automobile in which plaintiff was riding and which was driven by his twenty-nine year old son, it was error to instruct the jury, as a matter of law, that the negligence of the driver of the automobile, if any, was imputable to the plaintiff, where there was evidence that the plaintiff had no control or direction mechanically in the driving or management of the machine at the time of the accident, but the same was under the full control and direction of the son, who was an experienced driver of automobiles, notwithstanding the existence of the relationship between the parties and the fact that both were employed by or interested in the same corporation.

ID.—IMPUTABLE NEGLIGENCE—RULE.—In order that the negligence of one person may be properly imputed to another, they must stand in such relation of privity that the maxim *qui facit per alium facit per se* directly applies, since no other rule is consistent with section 1714 of the Civil Code, wherein it is declared that every one is responsible for an injury occasioned to another by his want of ordinary care, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself.

APPEAL from an order of the Superior Court of Los Angeles County granting a new trial.   J. P. Wood, Judge.

The facts are stated in the opinion of the court.

J. W. McKinley, Frank Karr, R. C. Gortner, E. E. Morris, and A. W. Ashburn, Jr., for Appellant.

E. B. Drake, for Respondent.

LAWLOR, J.—G. L. Bryant brought this action to recover damages for personal injuries alleged to have been caused by one of the defendant's electric cars colliding with an automobile in which he was riding. At the time of the accident the plaintiff's son was driving the machine. A trial was held before a jury which resulted in a verdict for the defendant, but, on motion by the plaintiff, a new trial was granted

CLXXIV Cal.—47

"solely on the ground that the court erred in instructing the jury that negligence of the driver of the automobile, if any, was to be imputed to the plaintiff." The defendant appeals from this order.

That the court did so instruct the jury is not questioned. One of the pertinent instructions, for instance, reads: "The actions of the said driver of the said automobile, the son of the plaintiff herein, are in law the actions of the plaintiff in this case. That is to say, if the said driver of said automobile, the son of plaintiff, was guilty of negligence, such negligence is imputable to the said plaintiff, and is a bar to this case, if it contributed directly or proximately to the collision between the said car and the said automobile." Again: "If you find from the evidence that the said driver of said automobile was guilty of negligence in swerving upon or entering upon the said railroad tracks . . . then no recovery can be had in this action." These and other instructions of like effect were given to the jury at the request of the defendant, and indicate the theory upon which it based its defense and upon which the court tried the case. In addition, the following special interrogatory was submitted to the jury wherein all distinction between the independent contributory negligence of the plaintiff and that of the driver is wholly ignored: "Was the plaintiff or his son driving the automobile guilty of negligence, which contributed proximately, in any degree, to the collision between the street-car and the automobile?" The answer was "Yes." Clearly, if under the evidence adduced at the trial the negligence of the son is not to be imputed to the plaintiff as a matter of law, the order granting the new trial was proper and must be affirmed.

The automobile in which the plaintiff was riding at the time of the accident was owned by the Bryant Upholstery and Furniture Company, "a close corporation, consisting of the Bryant family, father, mother, and son, mostly, which held the controlling interest." The plaintiff was president of the corporation, and his son the secretary and manager. The corporation used the automobile in its business in delivering goods and going to various houses in the city and collecting furniture to be upholstered. According to the evidence, "instead of having the expense of keeping the automobile up town" it was always kept in the barn at the plaintiff's resi-

dence.   At this residence the plaintiff lived with his wife and son.   On the day of the accident, at closing time, it became necessary to make a delivery for the corporation on the east side of the city, which was on a detour and not a direct line to the garage where.the machine was kept.   The plaintiff and his wife were at the place of business, and together with the son driving the automobile made the delivery.   On their way home the plaintiff rode on a box placed on the rear of the automobile, and steadied himself by turning a little to the side and holding to the back of the front seat.   His wife rode on the front seat at the left of the son.   There was evidence submitted by the plaintiff "that the plaintiff had no control or direction mechanically in the driving or management of said automobile at the time of said accident, but the same was under the full control and direction mechanically of the plaintiff's son, the said Leslie G. Bryant, who was twenty-nine years of age and an experienced driver of automobiles."   Other evidence was to the effect "that the father, mother, and son were driving home to supper; that the father was not paying any fare; that the father and mother and son were simply going toward home as a family, and the son was driving wherever the father, mother, and son wanted to go."   While thus driving south on Moneta Avenue in the city of Los Angeles, and approaching West Fortieth Place, the car was driven on to the southgoing track of the defendant's railroad where it was suddenly overtaken from the rear by a "beach car," a car larger than an ordinary street-car, which was traveling "at a tremendous rate of speed."   In the collision which resulted, plaintiff received the injuries complained of.

This court has but recently reiterated the well-settled rule that a guest or passenger in a vehicle driven or operated by another is not, ordinarily, bound by the negligence of the driver or operator.   (*Parmenter* v. *McDougall*, 172 Cal. 306, [156 Pac. 460].)   In that case the negligence of a person operating a motorcycle was held not to be imputed as matter of law to his brother who was riding as his guest on the rear seat.   The case at bar presents a somewhat different question. But first it may be observed that the mere relationship of the plaintiff and his son cannot, as suggested, take the case out of the rule.   (*Board of Commrs.* v. *Mutchler*, 137 Ind. 140, [36 N. E. 534].)   Nor does the added circumstance that both

persons were employed by or interested in the same corporation necessarily alter the situation. In *Siever* v. *Pittsburgh etc. Ry. Co.*, 252 Pa. St. 1, [97 Atl. 116], it was held that the negligence of a street-car conductor in causing a collision with a railroad train, could not be imputed to the motorman "merely because they were working together on the same car," so as to prevent his recovery in an action brought against the railroad company. In *McBride* v. *Des Moines City Ry. Co.*, 134 Iowa, 398, [109 N. W. 618], the negligence of a driver of a hose-wagon was held not to be imputable to another member of the fire department who was riding with him at the time of a collision with the defendant's street-car. In *Baxter* v. *St. Louis Transit Co.*, 103 Mo. App. 597, [78 S. W. 70], the fact that plaintiff's son was engaged in helping to deliver ice along with the driver of an ice-wagon at the time of the accident was held not to constitute such a relation as to make the negligence of the driver the negligence of the son. This is further illustrated by *Johnston* v. *Delano* (Iowa), 154 N. W. 1013. In that case it was held that even though the plaintiff's employee negligently drove a team into collision with one of the defendant's trains, it constituted no defense to an action brought by plaintiff to recover for the death of his minor son who was riding with the employee as a helper at the time of the accident. These authorities are in accord with the cases in this state, and to this extent the reasoning of *Thorogood* v. *Bryan*, 8 Com. B. 115, [137 Eng. Reprint, 452], does not apply. (See *Little* v. *Hackett*, 116 U. S. 366, [29 L. Ed. 652, 6 Sup. Ct. Rep. 391].) The family relation, or the business association, therefore, does not of itself identify the plaintiff with the driver so as to impute to him the latter's alleged contributory negligence.

The rule is otherwise, however, if the occupant of the machine exercised control over the driver thereof, or, in the eyes of the law, may be said to possess such power of control. Illustrations of the application of this doctrine are found in cases where the parties are engaged in a common or joint enterprise. Ruling Case Law, after referring to the different rules as to whether negligence may be imputed to a guest or passenger in an automobile, says: "There seems to be no difference of opinion as to the rule that when two persons are engaged in a joint enterprise in the use of an automobile, the contributory negligence of one will bar a recovery by either,

if it is in a matter within the scope of the joint undertaking."
(Vol. 2, p. 1208, sec. 43.)    But in order that there be such
a joint undertaking it is not sufficient merely that the pas-
senger or occupant of the machine indicate to the driver or
chauffeur the route he may wish to travel, or the places to
which he wishes to go, even though in this respect there exists
between them a common enterprise of riding together.    The
circumstances must be such as to show that the occupant and
the driver together had such control and direction over the
automobile as to be practically in the joint or common posses-
sion of it.    "Parties cannot be said to be engaged in a joint
enterprise, within the meaning of the law of negligence, un-
less there be a community of interest in the objects or pur-
poses of the undertaking, and an equal right to direct and
govern the movements and conduct of each other with respect
thereto.    Each must have some voice and right to be heard in
its control and management."    (*St. Louis etc. Ry. Co.* v.
*Bell* (Okl.), 159 Pac. 336; *Atwood* v. *Utah Light etc. Ry. Co.*,
44 Utah, 366, [140 Pac. 137] ; *Cotton* v. *Willmar etc. Ry. Co.*,
99 Minn. 366, [116 Am. St. Rep. 422, 9 Ann. Cas. 935, 8
L. R. A. (N. S.) 643, 109 N. W. 835].)    In the case first
cited, which arose out of a collision of a street-car with an
automobile in which the deceased was riding with a number
of lady friends, the court, upon a careful consideration of
the authorities, said: "Assuming that the trip was a 'joy
ride,' as contended, it was not a joint or common under-
taking." *Martindale* v. *Oregon Short Line Ry. Co.* (Utah),
160 Pac. 275, and *Lawrence* v. *Sioux City,* 172 Iowa, 320,
[154 N. W. 494], are recent cases of similar import.    A case
of a joint or common undertaking, however, is *Van Horn* v.
*Simpson,* 35 S. D. 640, [153 N. W. 883].    In that case the
court held that where the evidence showed that the occupant
of an automobile was a partner of the driver and owner
thereof, and was at the time of the accident engaged with
his partner, the driver, in the prosecution of copartnership
business, both parties were joint participants in the alleged
negligence.    Likewise in *Washington & C. O. Ry. Co.* v.
*Zell's Admx.,* 118 Va. 755, [88 S. E. 309], the deceased and
another person took an automobile trip in a machine which
the deceased, according to his custom, put in readiness for the
trip, and both participated in running it.    The machine was
owned by the deceased's companion.    It was properly held

that the parties were engaged in a joint enterprise or adventure, for the right of control of either person over the other is readily apparent.

That all the authorities do not require evidence of the exercise of such control to establish a joint enterprise is quite true. Thus Berry's Law of Automobiles, second edition, section 322, points out that in many cases where the doctrine of imputed negligence has been applied the relation between such persons, while somewhat similar to that of master and servant, as a matter of fact "lacks the essential element of that relation of control." "Neither," he continues, "has control of the details by means of which the common purpose is executed. Hence, the only theory on which one may be charged with the negligence of another is that each is engaged in the performance of the plans which all have agreed upon and which are as personal to one as to another. It is a sort of partnership, as it were." Such a case is *Wentworth* v. *Town of Waterbury* (Vt.), 96 Atl. 334, where apparently the only basis for the imputation of the negligence of the driver of the automobile to the plaintiff was the circumstance that they were both engaged in the common purpose of taking two ladies for an afternoon's drive to view a lake.

In our opinion, the doctrine of imputable negligence should not be so loosely applied. To do so leaves the law in an uncertain state. The better view is expressed by *Nonn* v. *Chicago City Ry. Co.*, 232 Ill. 378, [122 Am. St. Rep. 114, 83 N. E. 924]: "There can be no such thing as imputable negligence, except in those cases where such a relation exists as that of master and servant or of principal and agent. In order that the negligence of one person may be properly imputed to another they must stand in such relation of privity that the maxim *qui facit per alium facit per se* directly applies." Indeed, no other rule is consistent with section 1714 of the Civil Code, wherein it is declared that every one is responsible for an injury occasioned to another by his want of ordinary care "except so far as the latter has, willfully or by want of ordinary care, *brought the injury upon himself.*" (Italics ours.)

It is clear, therefore, that the jury should have been permitted to pass upon the question of fact as to whether the plaintiff exercised, or had the right of exercising, control over the son in driving the automobile home at the time of

the collision. Had it been properly instructed it may have found that the son, as manager of the Bryant Upholstery and Furniture Company, had full and absolute control over the movements of the machine, and recognized as his superior only the corporation, and then only such orders as might be given by its officers when acting in their official capacity. This, of course, is not a case where the corporate entity may be disregarded. As far as the plaintiff's right of control existed at the time of the accident, the jury may have concluded that it, in fact, extended no further than that control common to guests or passengers for hire. There was evidence that the son was an adult person and an experienced driver of automobiles, and the jury may have found the fact to be that he was in all respects an independent agent. The machine, it should be repeated, belonged to the corporation. It may be conceded that the plaintiff and his son were jointly interested in the conduct of the business of the corporation. But it does not necessarily follow that they possessed a joint or community interest in the matter of driving the automobile. These and other questions of similar import involve matters of fact for the jury to determine in the light of the principles of law we have enunciated.

The order granting the new trial is affirmed.

Shaw, J., and Sloss, J., concurred.

Hearing in Bank denied.