[Civ. No. 4179. Second Appellate District, Division One.—July 23, 1923.]

## M. H. MEYERS, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

[1] NEGLIGENCE — GUEST IN AUTOMOBILE. — Under ordinary circumstances a guest in an automobile is not in anywise affected by any negligence of the owner or driver in connection with the operation of the automobile. It is only when the guest as such fails to exercise ordinary care for his own safety—that is, when he either does something or fails to do something which an ordinarily careful person situated as the guest was situated would either have done or would have failed to do—that any question of negligence on the part of the guest can arise; and whether or not he exercised such care is a question of fact for the jury to determine.

[2] ID. — JOINT ENTERPRISE — USE OF AUTOMOBILE — IMPUTED NEGLIGENCE.—Where persons use an automobile in a joint enterprise the negligence of one of such persons is imputed to each of the others; but except in those cases in which the relation of master and servant, or that of principal and agent, is shown, there can be no such thing as imputed negligence.

[3] ID.—COMMUNITY OF INTEREST—EQUAL CONTROL AND MANAGEMENT. A joint enterprise is not indicated by the fact that the guest and the driver each sought the same destination and by means of the same conveyance, but there must be a community of interest in the objects or the purposes of the undertaking and an equal right to direct and govern the movements and conduct of each

---

1.  Negligence of driver of automobile as imputable to occupant or guest, notes, 19 Ann. Cas. 1225; Ann. Cas. 1913B, 684; Ann. Cas. 1915B, 769; Ann. Cas. 1916E, 268, 685; Ann. Cas. 1918B, 841; Ann. Cas. 1918C, 961; L. R. A. 1915B, 953.

other with respect thereto, and each must have some voice and right to be heard in its control and management.

[4] ID.—AUTOMOBILE COLLISION — INJURY TO OCCUPANT — JOINT ENTERPRISE—ERRONEOUS INSTRUCTIONS—NEW TRIAL.—In this action for damages for personal injuries received as the result of a collision between an automobile in which plaintiff was riding and a train of cars operated by the defendant railroad company, in view of the condition of the evidence bearing on the questions of imputed negligence and joint enterprise and the misleading and inaccurate statements by the court as to the meaning of the expression "joint enterprise," which the court attempted to define, coupled with the erroneous statement by the court to the jury that it was up to them "to say whether there was any joint enterprise," the court properly granted plaintiff's motion for a new trial, following the verdict of the jury in favor of defendants.

APPEAL from an order of the Superior Court of Los Angeles County granting a new trial. Chas. Monroe, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. I. Gilbert for Appellant.

Rudolph & Warne and Isaac Pacht for Respondent.

HOUSER, J.—The matter before the court herein is an appeal by the defendant Southern Pacific Company from an order granting a new trial. The order granting the motion for a new trial, from which the appeal is taken, is in the words following: "The motion for new trial, heretofore submitted, at this time it is ordered, that the motion for a new trial be and is hereby granted on the sole ground that the court left the question of common enterprise to the jury and did not instruct the jury that the negligence of the driver could not be imputed to the plaintiff."

On the evening of February 2, 1921, between 9 and 9:30 o'clock, plaintiff and two companions named, respectively, Torry and Rouden, were traveling in a single-seated automobile in a southerly direction following the car tracks on the westerly side of Alameda Street, in the city of Los Angeles, where the automobile collided with a train of cars operated by the defendant Southern Pacific Company that was being backed or "kicked against traffic" on the westerly

side of Alameda Street—and from which accident plaintiff received injuries of which he complains in this action.

The evidence relating to the question of joint enterprise, or whether the negligence of the driver could be imputed to plaintiff, is substantially as follows: M. H. Meyers, the plaintiff, testified on direct examination that on the second day of February he and Rouden were riding with Torry in a car which was owned and which was being driven by Torry. Plaintiff was sitting on Rouden's lap and Rouden was sitting to the right of Torry. They were traveling on the westerly side of Alameda Street, between Seventh and Eighth Streets, and were going out to Fifty-sixth Street to the home of an aunt of plaintiff for the purpose of calling upon plaintiff's grandmother, who was celebrating a birthday anniversary on that day. Torry had been out to that house with plaintiff about a week or so previously, and at that time he was invited back to the house by plaintiff's aunt. Plaintiff and Rouden were on very friendly terms and had been together practically all that day. They were also very friendly with Torry. Plaintiff and Torry were at the aunt's house about 6 o'clock on the evening of the accident. They had gone there in Torry's automobile. Plaintiff's aunt said, "You boys come out to-night." Torry and plaintiff met Rouden later that evening at Third and Main Streets and plaintiff invited Rouden to go with him and Torry. Neither Torry nor Rouden was related to plaintiff; all of which testimony was substantially corroborated by the witness Torry, who also stated that both Meyers and Rouden were riding in the automobile at Torry's request; that the party left Third and Main Streets at about 9 o'clock; that plaintiff's aunt invited Torry to the party, and that it was to go to that party that the three men got into the car and started out.

The witness Rouden corroborated the testimony of the other two witnesses, and added that Torry was driving; that neither Meyers nor Rouden had anything to do with the driving, and that when Meyers invited Rouden he said, "Come on, we are going out to my aunt's house."

The court refused an instruction, proffered by plaintiff, upon the question of imputed negligence and joint enterprise. There were, however, in the instructions two references thereto, as follows: "As you are elsewhere instructed, the negligence of the driver is not to be imputed to the plain-

tiff unless you believe from the evidence that the plaintiff and the driver were at the time of the accident engaged in a joint and common enterprise. If you find that they were, then negligence of the driver is to be imputed to the plaintiff. . . . That negligence, as I say, cannot be imputed to plaintiff unless plaintiff and the driver were engaged in a joint and common enterprise.''

No written instructions were given to the jury defining what was meant by the expression ''joint and common enterprise.''

After the jury had retired to deliberate on its verdict it returned to the courtroom when the following conversation took place:

''Foreman Swain: We would like a further instruction in regard to what constitutes a joint enterprise.

''The Court: Well, that is a matter that I have got to leave to you. I don't think it is necessarily confined to business. If it is a joint enterprise of any kind, that is where they are both interested.

''Foreman Swain: Whether it is business, social or otherwise?

''The Court: Yes. You have heard the discussion, and I said I was not going to confine it to business, but as to details I could not answer your question. You have heard the evidence, and it is not confined to business. It is up to you folks to say whether there was any joint enterprise.

''Foreman Swain: I think we can cover it.

''The Court: . . . If you should find that that [defendant's negligence] did proximately contribute to the injury, then the defendant would be liable unless you should also find that the plaintiff was guilty of negligence himself or that the plaintiff and driver were in a common and joint enterprise, so that the negligence of the driver was imputed to the plaintiff.''

The jury then retired, but again came into court for further instruction, as follows:

''Foreman Swain: We would like to have your Honor read us the definition of 'enterprise,' and give it to us from the dictionary. (Dictionary produced.)

''The Court: 'Enterprise: 1. That which one attempts to perform; any projected task or work upon which one sets out; an undertaking; scheme; especially a bold or difficult

undertaking, as the *enterprise* of tunneling the Alps. 2. The act of engaging, or the disposition to engage, in difficult undertakings; boldness, energy, and intention exhibited in practical affairs, especially in business; as, the railroads of the United States were built by private *enterprise.'*

"A Juror: That don't satisfy us so we can decide it.

"A Jurywoman: Enterprise is—

"The Court: I am afraid you will have to have your discussion with the jury.

"Foreman Swain: Just read the first part of that, please.

"The Court: (Re-reading dictionary definition.)"

[1] With some exceptions, the rule of law is that under ordinary circumstances a guest in an automobile is not in anywise affected by any negligence of the owner or driver in connection with the operation of the automobile. It is only when the guest as such fails to exercise ordinary care for his own safety—that is, when he either does something or fails to do something which an ordinarily careful person situated as the guest was situated would either have done or would have failed to do—that any question of negligence on the part of the guest can arise; and whether or not he exercised such care is a question of fact for the jury to determine. (*Parmenter* v. *McDougall,* 172 Cal. 306 [156 Pac. 460]; *Bryant* v. *Pacific Electric Ry. Co.,* 174 Cal. 737 [164 Pac. 385]; 29 Cyc. 548; *Bresee* v. *Los Angeles T. Co.,* 149 Cal. 136 [5 L. R. A. (N. S.) 1059, 85 Pac. 152]; *Thompson* v. *Los Angeles etc. Ry. Co.,* 165 Cal. 748 [134 Pac. 709].) [2] It likewise appears to be a well-settled rule of law that where persons use an automobile in a joint enterprise the negligence of one of such persons is imputed to each of the others; but except in those cases in which the relation of master and servant, or that of principal and agent, is shown, there can be no such thing as imputed negligence. (*Bryant* v. *Pacific Electric Ry. Co.,* 174 Cal. 737 [164 Pac. 385]; *Spence* v. *Fisher,* 184 Cal. 209 [14 A. L. R. 1083, 193 Pac. 255]; *Drouillard* v. *Southern Pac. Co.,* 36 Cal. App. 450 [172 Pac. 405]; *Ilardi* v. *Central California T. Co.,* 36 Cal. App. 493 [172 Pac. 763]; *Ellis* v. *Central California T. Co.,* 37 Cal. App. 396 [174 Pac. 407].)

The case of *Bryant* v. *Pacific Electric Ry. Co.,* 174 Cal. 737 [164 Pac. 385], was an action for personal injuries caused by one of the defendant's cars colliding with an au-

tomobile in which plaintiff was riding and which was being driven by the son of plaintiff. The automobile was the property of a corporation of which plaintiff was the president and the principal stockholder and the son was the secretary and manager. The automobile was used by the corporation in delivering goods. It was kept at a barn at the residence of plaintiff. On the day of the accident, at closing time, it became necessary to make a delivery for the corporation, which place of delivery was not in a direct line to plaintiff's place of residence. It happened that plaintiff and his wife were at the place of business and, together with the son, made the delivery, the son driving the automobile. There was evidence showing that plaintiff had no control or direction in the management of the automobile, but, on the contrary, that the full control was in the son. On the trial of the case the jury was in effect instructed that if the driver was guilty of negligence which contributed directly to the happening of the accident such negligence was imputable to the plaintiff. The jury returned a verdict for defendant and a new trial was granted on the ground that the court had committed error in giving such an instruction. In discussing the matter on appeal, the supreme court said, in part: "It is clear, therefore, that the jury should have been permitted to pass upon the question of fact as to whether the plaintiff exercised, or had the right of exercising, control over the son in driving the automobile home at the time of the collision. Had it been properly instructed it may have found that the son, as manager of the Bryant Upholstering and Furniture Company, had full and absolute control over the movements of the machine, and recognized as his superior only the corporation, and then only such orders as might be given by its officers when acting in their official capacity . . . It may be conceded that the plaintiff and his son were jointly interested in the conduct of the business of the corporation. But it does not necessarily follow that they possessed a joint or community interest in the matter of driving the automobile. These and other questions of similar import involve matters of fact for the jury to determine . . . " The following is taken from the case as an expression of opinion by the court as to what constitutes a joint enterprise: "But in order that there be such a joint undertaking it is not sufficient merely that the

passenger or occupant of the machine indicate to the driver or chauffeur the route he may wish to travel, or the places to which he wishes to go, even though in this respect there exists between them a common enterprise of riding together. The circumstances must be such as to show that the occupant and the driver together had such control and direction over the automobile as to be practically in the joint or common possession of it. . . . (Citing cases.)'' In the case of *Martindale* v. *Oregon Short Line R. Co.*, 48 Utah, 464 [160 Pac. 275], which is a case somewhat similar in its facts to the one before this court, it is held that if the driver of a team of horses attached to a wagon (in which plaintiff's intestate was riding) was guilty of negligence his negligence could not be imputed to the deceased; the mere fact that she had accepted an invitation of the several young people with whom she was riding to attend a dance being insufficient to charge her with being interested in a common or joint enterprise. And in this connection see, also, *Atwood* v. *Utah L. & R. Co.*, 44 Utah, 366 [140 Pac. 137]; *Lochhead* v. *Jensen*, 42 Utah, 99 [129 Pac. 347].

So far as the record here discloses, plaintiff was the guest of the witness Torry in the matter of the transportation in the automobile from Third and Main Streets to the home of plaintiff's aunt on Fifty-sixth Street. If driving an automobile on the westerly car tracks of the defendant Southern Pacific Company at such a time of night, or any other thing done by Torry, could be construed as a negligent act, such negligence on the part of Torry could not be imputed to plaintiff.

[3] In circumstances such as are here outlined joint enterprise is not indicated by the fact that the guest and the driver each sought the same destination and by means of the same conveyance. There must be more than such common desire and common method of transportation. There must be *"*a community of interest in the objects or the purposes of the undertaking, and an *equal right to direct and govern the movements and conduct of each other with respect thereto. Each must have some voice and right to be heard in its control and management."* (*Cunningham* v. *Thief River Falls*, 84 Minn. 27 [86 N. W. 765]; *St. Louis & S. F. R. Co.* v. *Bell*, 58 Okl. 84 [L. R. A. 1917A, 543, 159 Pac. 336]; *Atwood* v. *Utah L. & R. Co.*, 44 Utah, 366 [140 Pac.

137]; *Cotton* v. *Willmar etc. Ry. Co.*, 99 Minn. 366 [116 Am. St. Rep. 422, 9 Ann. Cas. 935, 8 L. R. A. (N. S.) 643, 109 N. W. 835].)

[4] While the record discloses the fact that after the jury had returned for further instructions there was some attempt on the part of the court to define what was meant by ''enterprise,'' as set forth in the dictionary, which was produced for that purpose, still the definition therein contained as to the word ''enterprise'' falls far short of that accurate information to which the jury was entitled as to the legal significance of the term ''joint enterprise,'' as used in the course of the instructions which were given by the court; besides, a part of the statements made by the court as to the meaning of the expression was misleading, if not inaccurate, as is shown by the citations to which we have already adverted. In addition thereto, from a purely legal standpoint, the judge was in error in stating to the jury, in answer to the question, that what constituted a joint enterprise was ''a matter that I have got to leave to you. . . . It is up to you folks to say whether there was any joint enterprise,'' as it erroneously placed with the jury the power of deciding a question of law. Had there been any conflict in the evidence produced by either side as to the relationship of master and servant or that of principal and agent which existed between plaintiff and Torry or with reference to the control of the automobile in which they were riding, which was sufficient in character to indicate a probability of the proper application of the doctrine of imputed negligence, or of the existence of a joint enterprise between them, or among plaintiffs, Torry and Rouden, there might have existed reasonable legal ground for submitting to the jury, under appropriate instructions, the question either of imputed negligence or of joint enterprise. In the light of the presented evidence, any negligence of Torry could not be imputed to plaintiff. Neither was the evidence sufficient to justify the conclusion to the effect that either Torry and plaintiff, or Torry, plaintiff, and Rouden, were engaged in a joint enterprise. It follows that the court was right in granting plaintiff's motion for a new trial.

Order affirmed.

Conrey, P. J., and Curtis, J., concurred.