OPINION
On April 9, 1996, Debbie P. Allen, individually and as guardian of William C. Allen, filed a complaint against Cynthia M. Lawrence, David Benefiel and Gordon Restaurants, Inc. in the Franklin County Court of Common Pleas. Ms. Allen set forth various claims for relief against the individual defendants arising out of a motor vehicle collision involving Mr. Allen, Ms. Lawrence and Mr. Benefiel. Ms. Allen averred that on the night of the collision, Ms. Lawrence and Mr. Benefiel had been drinking at the Char Bar, a bar owned by Gordon Restaurants, Inc. Later that evening, Ms. Lawrence was driving Mr. Benefiel home when she drove left of center, causing her car to collide with Mr. Allen's car. One claim for relief alleged, in essence, that Ms. Lawrence and Mr. Benefiel had engaged in a joint enterprise such that Ms. Lawrence's negligence was imputed to Mr. Benefiel.
On May 16, 1996, Mr. Benefiel filed a motion to dismiss, contending the complaint failed to state a claim as to the claims against him. On September 4, 1996, the trial court granted Mr. Benefiel's motion to dismiss. Ms. Allen appealed the trial court's granting of the motion to dismiss. This court reversed the trial court's judgment, in part, finding the complaint stated a claim under a theory of joint enterprise. Upon remand to the trial court, Mr. Benefiel filed a motion for summary judgment contending that the material facts were undisputed and that no joint enterprise had existed between himself and Ms. Lawrence.
On July 29, 1998, the trial court rendered a decision granting Mr. Benefiel's motion for summary judgment. An amended agreed judgment entry was journalized on January 19, 1999, finding no just cause for delay. Ms. Allen (hereinafter "appellant") has appealed to this court, assigning the following error for our consideration:
 THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE, DAVID BENEFIEL'S MOTION FOR SUMMARY JUDGMENT. GENUINE ISSUES OF MATERIAL FACT EXIST WITH RESPECT TO WHETHER DEFENDANT-APPELLEE AND CYNTHIA LAWRENCE WERE ENGAGED IN A JOINT ENTERPRISE.
We begin with the standard of review in summary judgment cases. Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. Zivich v. Mentor Soccer Club, Inc. (1998),82 Ohio St.3d 367, 369-370, citing Horton v. Harwick Chem. Corp.
(1995), 73 Ohio St.3d 679, paragraph three of the syllabus. Our review of the appropriateness of summary judgment is de novo. SeeSmiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35.
Appellant contends the trial court erred in granting summary judgment in favor of Mr. Benefiel (hereinafter "appellee") on the joint enterprise claim because the evidence showed that: appellee persuaded Ms. Lawrence to drink alcohol; appellee voluntarily entered Ms. Lawrence's car; appellee directed Ms. Lawrence to another bar; and Ms. Lawrence was driving while under the influence of alcohol. Appellant asserts that both appellee and Ms. Lawrence were in Ms. Lawrence's car with the purpose of operating it while under the influence of alcohol, that appellee authorized Ms. Lawrence to act for him and, as such, Ms. Lawrence's negligence may be imputed to appellee.
In Bloom v. Leech (1929), 120 Ohio St. 239, paragraph one of the syllabus, the Supreme Court of Ohio held that the doctrine of imputed negligence does not ordinarily apply in Ohio, but an exception to this exists when parties are engaged in a joint enterprise. A joint enterprise is the joint prosecution of a common purpose under such circumstances that each member of such enterprise has the authority to act for all in respect to the control of the agencies employed to execute such common purpose.Id. at paragraph two of the syllabus. In Bloom, the plaintiff was a passenger in the defendant's automobile. Id. at 239. The parties were in the automobile for the purpose of furthering a certain transaction between the parties, and the plaintiff-passenger told the defendant-driver where they were going. Id. at 241-242. When they came upon a street car crossing, the defendant-driver asked the plaintiff-passenger to look and see if a street car was coming. Id. at 242. The plaintiff-passenger looked in one direction and informed the defendant-driver that it was "all right, go ahead." Id. The defendant-driver proceeded to cross the tracks, and the automobile was hit by a street car coming from the other direction. Id. at 239, 242.
In discussing the principle of joint enterprise in relation to the facts of that case, the Supreme Court stated that the test was whether the parties were jointly operating or controlling the movements of the vehicle. Id. at 243-244. There must be a right of mutual control and where the guest has no voice in directing and governing the movements of the automobile, the guest cannot be said to be engaged in a joint "venture" with the driver. Id. at 244. Applying these principles to the facts presented, the Supreme Court stated that the most that could be claimed as to joint enterprise was that the plaintiff-passenger told the defendant-driver of their destination and upon the request of the defendant-driver, the plaintiff-passenger looked for street cars and reported his findings. Id. at 245.
The plaintiff-passenger had no power or control over the vehicle. Id. As to the plaintiff-passenger's report of the presence of street cars, the defendant-driver had the option to act or not act based upon such report. Id. In addition, while the trip was beneficial to the plaintiff-passenger, the purpose of the trip did not comprehend joint operation or control of the automobile in which they drove. Id. Finally, the Supreme Court stated a joint enterprise was not established merely by the fact that the passenger of a vehicle indicated to the driver the route the passenger may wish to take or the destination; rather, the circumstances must be such that the passenger and the driver together had such control and direction over the automobile as to be practically in the joint or common possession of it. Id. at 245-246, quoting Bryant v. Pac. Elec. Ry. Co. (1917), 174 Cal. 737,164 P. 385.
Most other cases involving allegations of joint enterprise in the context of the use of motor vehicles have found no joint enterprise existed. For example, in Parton v. Weilnau
(1959), 169 Ohio St. 145, 162, the Supreme Court found no joint enterprise when two police officers were on duty in the same vehicle because the police officer-passenger had no power or control over the driving. Parton shows that while there existed a common purpose between the police officers, that of engaging in their duties, there was no commonality of authority, power or control over the driving of the vehicle. Therefore, a joint enterprise did not exist so as to impute the negligence of the driver to the passenger. Id. at paragraph six of the syllabus.
In O'Donnell v. Korosec, (Nov. 27, 1992), Geauga App. No. 91-G-1659, unreported, the court of appeals found no joint enterprise when two persons rode together on a motorcycle because the passenger had no control over the driver, and there was no evidence the passenger made any decision regarding the operation of the motorcycle, including the decision to run through a stop sign. Id. at 6. The court of appeals noted that the fact that a driver and a passenger may have a common destination or objective or that a passenger has paid a share of the cost of the trip is not sufficient to constitute a joint enterprise. Id. at 4, citingLester v. John R. Jurgensen Co. (1968), 400 F.2d 393, 396.
In Collopy v. Gardiner (Apr. 7, 1986) Clermont App. No. CA85-08-057, unreported, the court of appeals found no joint enterprise when three persons drove and/or rode in a car while drinking alcohol. The driver at one point was unable to control the steering wheel, and the front seat passenger attempted to grab it. Id. at 3. The driver pushed the passenger away. Id. The driver then drove left of center and collided with an oncoming automobile. Id. The court of appeals found no joint enterprise because there was no evidence the passengers had any legal right to control the vehicle, to direct the manner in which the vehicle was operated or to direct the route taken. Id. at 9-10.[1]
Other cases involving the use of motor vehicles and the finding of no joint enterprise emphasize the passenger's lack of control over the actual operation of the vehicle. See Pfund v. Ciesielczyk
(1992), 84 Ohio App.3d 159, 168; Tittle v. Maurer (Oct. 23, 1995), Shelby App. No. 7-95-5, unreported.
The above cases show that the key to finding the existence of a joint enterprise in the context of the use of a motor vehicle is the passenger's control over or right to control the actual operation and movement of the motor vehicle. The facts in the case at bar, construed most strongly in favor of appellant, show that appellee had neither actual control over nor the right to control the operation of Ms. Lawrence's vehicle. The motor vehicle collision which is the subject of this case occurred just after midnight on May 6, 1996. Earlier that evening, on May 5, 1996, employees of the Hyatt Regency ("Hyatt") had gathered after work at a nearby bar, the Char Bar. Appellee, executive chef of the Hyatt, left work around 4:00 or 4:30 p.m and went to the Char Bar. (Benefiel deposition at 12.) He immediately started drinking margaritas. Id. at 21. He also drank beer. Id. Appellee estimated that during the course of the evening, he drank approximately ten to twelve beers and eight margaritas. Id. at 36.
Ms. Lawrence, supervisor of the Hyatt bake shop, also worked that day and arrived at the Char Bar at around 5:00 p.m. (Lawrence deposition at 7, 20.) Ms. Lawrence drank water at first. (McKissick deposition at 49.) Ms. Lawrence was reluctant to have an alcoholic beverage, but appellee persuaded her to have a margarita, which he bought for her. Id. at 49-50, 73, 78. During the course of the evening, Ms. Lawrence had two margaritas and a small portion of a third margarita. Id. at 52. (Lawrence deposition at 40.) Appellee paid for all of Ms. Lawrence's drinks. (McKissick deposition at 78.)
Ms. Lawrence was told by other employees that appellee needed a ride home. (Lawrence deposition at 30.) Ms. Lawrence thought it would be unsafe for appellee to drive home, so she indicated she would take appellee home. Id. at 30-31. Ms. Lawrence volunteered to drive appellee home and appellee agreed.Id. at 33-34, 63. (Benefiel deposition at 29.) Appellee was drunk, knew he could not drive, and saw Ms. Lawrence had only had a couple of drinks. (Benefiel deposition at 24, 46-47.) Ms. Lawrence offered him a ride home, and he "didn't think twice."Id. at 46. Appellee and Ms. Lawrence lived in the same area of town. Id. at 29.
Appellee and Ms. Lawrence left the Char Bar at around 11:00 p.m. (Lawrence deposition at 18.) Appellee vaguely remembers leaving the Char Bar, and he recalls going to Ms. Lawrence's car. (Benefiel deposition at 28-29.) Ms. Lawrence drove. (Lawrence deposition at 32-33.) They stopped at another bar, The Garage, that was on the way home. Id. at 28, 34. According to Ms. Lawrence, appellee said "let's stop here," and she pulled over. Id. at 34. When asked why she stopped at The Garage, Ms. Lawrence stated that it was appellee's idea, that she "[s]topped on my own," that she did not feel compelled to stop, and that she had "never been there so I just was curious myself to go in there." Id. at 65-68. Appellee testified that after leaving the Char Bar, they made no other stops at any bars. (Benefiel deposition at 30.)
At The Garage, appellee ordered two beers; however, they did not consume them, and Ms. Lawrence had just a part or a taste of hers. (Lawrence deposition at 23-24, 36-37.) They stayed at The Garage no more than ten minutes. Id. at 43. Upon leaving The Garage, Ms. Lawrence was able to walk and talk. Id. at 40-41. Ms. Lawrence and appellee had very little conversation on the way home, and the only conversation appellee remembers was "directions of how to get to where we're going and that's about it." Id. at 42. (Benefiel deposition at 48.)
Ms. Lawrence recalls nothing about the collision with appellant's husband and did not know how the accident occurred. (Lawrence deposition at 39.) Appellee did not recall the collision. (Benefiel deposition at 32.) When asked whether he recalled passing out or going to sleep in the car, appellee stated "I don't have any memory so I may have sort of passed out." Id. The next thing appellee remembered was waking up in the emergency room. Id.
Ms. Lawrence stated that appellee did not have any right to control her vehicle. (Lawrence deposition at 65.) Appellee did not have the ability to determine Ms. Lawrence's driving skills. Id. John A. Williams, a police officer with the city of Columbus, investigated the collision and determined that Ms. Lawrence had driven left of center, causing the collision with appellant's husband. (John A. Williams deposition at 70.)
The above evidence shows that appellee had no control over or right to control the operation of the vehicle driven by Ms. Lawrence. Indeed, it is clear that appellee was highly intoxicated and probably passed out or was sleeping at the time of the collision. The fact that appellee persuaded Ms. Lawrence to drink at the Char Bar, paid for her drinks, asked her to stop at The Garage, gave her directions, and benefited from getting a ride home from her is not sufficient to make this a joint enterprise. Appellee may have done all of these things; however, none of them constituted control over the actual operation of the vehicle. SeeBloom at 243-246.
The cases cited by appellant in support of her contentions are either inapplicable or distinguishable. In TheNew York, Chicago St. Louis Railroad Co. v. Kistler (1902),66 Ohio St. 326, the Supreme Court found the existence of a joint enterprise when a father, who was "very deaf," took his daughter along with him in a buggy so that she could hear for him. Id. at 327. The Supreme Court found that because the daughter was to listen for her father and assist in looking while her father did the driving, they were engaged in a joint enterprise. Id. at 343. In Kistler, the daughter-passenger actively participated in the manner in which the buggy was being operated. Such participation by appellee in the operation of Ms. Lawrence's car did not occur in the case at bar.
In West American Ins. Co. v. Carter (1989), 50 Ohio Misc.2d 20, the Licking County Municipal Court concluded a joint enterprise existed between three minors who stole a vehicle and then caused damage to it. One of the three minors noticed that a parked car had keys in the ignition and suggested that they steal it. Id. at 21. This same minor got into the driver's seat, and the others entered the car. Id. The municipal court cited Willsv. Anchor Cartage Storage Co. (1926), 26 Ohio App. 66, 72, which stated:
 "We understand that when a passenger in an automobile becomes engaged in a joint enterprise and urges on the driver of the car, or does something which indicates that he participates in the misconduct, if there is misconduct on the part of the driver, that then, of course, such negligence may be attributed to him. * * * " Carter at 22.
The Carter court went on to note that negligence due to a joint enterprise should be strictly confined to circumstances where two or more persons unite in the joint prosecution of a common purpose and each has the authority to act for all in respect to the control of the means employed to execute the common purpose. Id. The court stated that the actions of all three minors suggested that they had a common purpose to steal the vehicle and by voluntarily entering the vehicle, the two passengers impliedly authorized the driver to act for them. Id.
In the case at bar, there is no evidence of a common purpose between appellee and Ms. Lawrence to engage in wrongful conduct. Drinking alcohol together on a social basis does not in and of itself rise to the level of a common scheme to drive under the influence, and appellee's acceptance of a ride home did not somehow constitute an implied authorization for Ms. Lawrence to act for him. There is no evidence, for example, that appellee had the power or authority to decide whether or not Ms. Lawrence would drive that night. Indeed, the evidence shows that it was Ms. Lawrence's decision alone to drive that night, and it was Ms. Lawrence who offered appellee a ride home.
In addition, the court in Carter seemed to emphasize the existence of a common scheme with regard to stealing the vehicle rather than operating the vehicle. However, the essential requirement as set forth by the Supreme Court in Bloom is whether or not the passenger had control over the operation of the vehicle. Again, appellee had no control over Ms. Lawrence's manner of driving, and this is why no joint enterprise existed.
In Earl v. Terry, (June 30, 1988), Butler App. No. CA87-10-126, the issue was whether or not the driver was negligent in his participation in conduct that resulted in a person being shot. The court of appeals defined joint enterprise as a common purpose between individual members. Id. at 7-8. The court of appeals found genuine issues as to whether or not the driver's conduct in following another vehicle, knowing that one passenger had a gun, constituted a common purpose. Id. at 8. The issue was not whether each person had a right to control the actual operation of the vehicle. Indeed, the evidence was that the driver, on his own, chose to follow the request of his passengers to pursue the other vehicle. Id. at 8. The negligence to be imputed was that of a passenger who shot and killed a person in the vehicle being pursued. Obviously, the driver who pursued such other vehicle could be held negligent as well because he actively participated in the wrongful conduct. The facts in the case at bar are clearly distinguishable.
Given all of the above, we find no genuine issue of material fact, and appellee is entitled to judgment as a matter of law on the claim of joint enterprise. The negligence that appellant contends should be imputed to appellee is that of driving under the influence of alcohol which, presumably, led to the collision that occurred. However, and as stated in Bloom at 245, the purpose of the car trip here did not comprehend joint operation and control of Ms. Lawrence's automobile. Appellee was merely getting a ride home. There is no dispute that appellee had no control over or right to control Ms. Lawrence's operation of her automobile. Therefore, no joint enterprise existed between appellee and Ms. Lawrence. Accordingly, appellant's sole assignment of error is overruled.
Having overruled appellant's sole assignment of error, the judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of appellee on the claim of joint enterprise is affirmed.
Judgment affirmed.
BRYANT and BROWN, JJ., concur.
[1] We note again that as to directing the route to be taken, the Supreme Court has found that such is insufficient to constitute a joint enterprise. Bloom at 245-246.