DECISION.
{¶ 1} Plaintiff-appellant, Mary Patricia McQuaide, appeals the summary judgment granted by the Hamilton County Court of Common Pleas in favor of defendants-appellees, the Board of Commissioners of Hamilton County, Ohio ("county"), Heather Hensley, and Jared Ballew, in a wrongful-death action. For the following reasons, we affirm the trial court's judgment.
 {¶ 2} In early June 2000, sixteen-year-old Michelle Luhn received her driver's license. On June 9, 2000, Luhn drove two of her friends, Hensley and Ballew, to Hillside Avenue, a two-lane road in western Hamilton County. They were riding in the Jeep Cherokee owned by Luhn's parents. As they traveled down the road, they discussed a "hump"[1] in the road that was known to cause a vehicle traveling at high speed to become airborne, an activity known in the neighborhood as "hill-hopping."
 {¶ 3} The hump in the road was in the opposite lane of traffic. Luhn turned the car around after they had passed the hump and proceeded in its direction. They traveled over the hump at approximately the posted speed limit of thirty-five miles per hour, and although the occupants of the car could feel the contour of the road change, Luhn did not lose control of the vehicle.
 {¶ 4} Luhn, Hensley, and Ballew then went to a park where they picked up Luhn's sister and a number of other children. At that point, the total number of occupants in the vehicle, including Luhn, was eleven. After Luhn accidentally struck a curb, the topic of hill-hopping arose, and Luhn again drove down Hillside Avenue, traveling the same path that she had taken earlier that day.
 {¶ 5} As she approached the hump the second time, though, Luhn drove the car at a speed significantly greater than the posted speed limit. After going over the hump, Luhn lost control of the vehicle, and it struck a utility pole and flipped over. As a result of the accident, thirteen-year-old Anna Marie De Stefano suffered fatal injuries.
 {¶ 6} McQuaide, De Stefano's mother and the executor of her estate, filed suit against Luhn and the appellees. The claims against Luhn were ultimately settled, and she was dismissed from the action. In the remaining claims, McQuaide alleged that Hensley and Ballew had encouraged, aided, and abetted Luhn in the negligent operation of the vehicle and that the county had failed to keep Hillside Avenue free from nuisance.
 {¶ 7} The appellees filed motions for summary judgment, and the trial court granted each of the motions. McQuaide now appeals, setting forth two assignments of error. In her first assignment, she argues that the trial court erred in granting summary judgment in favor of the county.
 {¶ 8} Pursuant to Civ.R. 56(C), a motion for summary judgment is to be granted only when no genuine issue of material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and, with the evidence construed most strongly in favor of the nonmoving party, that conclusion is adverse to that party.[2]
The party moving for summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists, and once it has satisfied its burden, the nonmoving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial.[3] This court reviews the granting of summary judgment de novo.[4]
 {¶ 9} Political subdivisions are generally immune from liability under R.C. 2744.02(A)(1) for damages incurred in the performance of a "governmental function," and the "maintenance and repair" of roads is included in the statutory definition of "governmental function."[5] But R.C. 2744.02(B) lists several exceptions to the general grant of immunity. One of the exceptions is listed in R.C. 2744.02(B)(3), which provides that political subdivisions are liable for injury caused "by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads." The parties agree that this exception embodies the concept that the former version of the statute referred to as "nuisance."
 {¶ 10} In Haynes v. Franklin,[6] the Supreme Court of Ohio established a two-prong test to determine whether a condition in the right-of-way constitutes a nuisance under R.C. 2744.03(B)(3). To withstand a motion for summary judgment, the plaintiff must establish that "the condition alleged to constitute a nuisance creates a danger for ordinary traffic on the regularly traveled portion of the road" and that the cause of the condition in the right-of-way "was other than a decision regarding design and construction."[7]
 {¶ 11} In the case at bar, we agree with the trial court that McQuaide failed to establish that the "hump" in the road created a danger to ordinary traffic. In attempting to prove a nuisance, McQuaide relied heavily on the report of her expert witness, engineer H. Richard Hicks. Hicks stated in his report that the hump was a "dangerous condition that was a cause of the crash." But Hicks conceded in his deposition testimony that his report had not taken into account the speed that Luhn's vehicle was traveling, and that in fact he had not performed any analysis concerning the speed at which the hump could be traversed safely. Hicks's opinion thus did not address the necessary element of whether the hump created a danger for "ordinary traffic" as formulated by the court inHaynes. Given this circumstance, Hicks's report did not support McQuaide's claims that the hump constituted a nuisance.
 {¶ 12} In arguing that the hump was a nuisance, McQuaide also cited other accidents that had occurred in the vicinity of the hump before the accident in the case at bar. We are not persuaded that these prior accidents established that the hump was a nuisance. First, there was no indication that the prior accidents occurred at the location of the Luhn accident. Although the traffic citations and police reports indicated that the accidents were in the same general area as the Luhn accident, they did not establish that the prior accidents had occurred at the site of the hump. Moreover, even if the reports had established that the prior accidents had occurred in the same location, they did not indicate that the hump was the cause of the accidents or, more importantly, that the hump could not be traversed safely in the course of ordinary traffic.
 {¶ 13} Also, as the trial court noted, Luhn herself had traveled over the hump earlier the same day, and when she had driven in conformity with the posted speed limit, she had been able to negotiate the hump without incident. Thus, even in light of Luhn's inexperience as a driver, the hump was not demonstrated to pose a danger for ordinary traffic. We therefore hold that the trial court correctly granted summary judgment in favor of the county, and we need not address the issue of whether the hump was the result of the design and construction of the road or whether Luhn's negligence was an intervening, superseding cause of the accident. The first assignment of error is overruled.
 {¶ 14} In her second assignment of error, McQuaide argues that the trial court erred in granting summary judgment in favor of Hensley and Ballew. Construing the evidence in a light most favorable to McQuaide, as we must, we take it to show that Hensley and Ballew had suggested that Luhn return to Hillside Avenue to show the more recent occupants of the vehicle the hump and to demonstrate hill-hopping. McQuaide argues that this encouragement rendered Hensley and Ballew jointly and severally liable for her injuries. We disagree.
 {¶ 15} Our starting point is the general rule "that the negligence of the driver of a motor vehicle cannot be imputed to his passenger(s)."[8] An exception to this rule is where the parties are engaged in a joint enterprise in which the passenger and driver are jointly operating or controlling the vehicle.[9] To demonstrate the existence of a joint enterprise, "it is not sufficient merely that the passenger or occupant of the machine indicate to the driver or chauffeur the route he may wish to travel, or the places he wishes to go * * *. The circumstances must be such as to show that the occupant and the driver together had such control and direction over the automobile as to be practically in the joint or common possession of it."[10]
 {¶ 16} In the case at bar, there was no evidence that either Hensley or Ballew had any control or direction over the vehicle that Luhn was driving and certainly no evidence that they were in joint or common possession of the vehicle. At most, the evidence indicated that Hensley and Ballew suggested that Luhn drive over the hump to show the other children what they had done earlier. As the Bloom court specifically stated, the mere indication by the passenger of the route he wishes to travel is not sufficient to show a joint enterprise.
 {¶ 17} McQuaide cites this court's decision in Johnson v.Thyen[11] for the proposition that all who actively participate in the commission of a tort or who command, direct, advise, encourage, aid, or abet its commission are equally liable. In Johnson, though, we emphasized that each of the tortfeasors had exerted control over the actions that had done harm to the plaintiffs' property.[12] Thus, we merely applied the general rule that the element of common control is necessary to establish joint and several liability; we did not expand it. Because the element of control was not proved in the case at bar, we findJohnson to be distinguishable.
 {¶ 18} McQuaide also cites a number of criminal cases in arguing that Hensley and Ballew, in encouraging the tortious activity, must be held equally liable.[13] We agree with Hensley and Ballew that these cases do not abrogate the rule stated above, that proof of control is a necessary prerequisite to liability in cases involving the passenger of an automobile. Because there was no evidence of such control here, the trial court properly granted summary judgment in favor of Hensley and Ballew. Accordingly, the second assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
Painter and Winkler, JJ., concur.
[1] The hump was described in police reports and in the report of McQuaide's expert as a four-degree incline in the right-of-way.
[2] See State ex rel. Howard v. Ferreri, 70 Ohio St.3d 587, 589,1994-Ohio-130, 639 N.E.2d 1189.
[3] See Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107,662 N.E.2d 264.
[4] Jorg v. Cincinnati Black United Front, 1st Dist No. C-030032,2003-Ohio-3668, at ¶ 6.
[5] See R.C. 2744.01(C)(2)(e).
[6] 95 Ohio St.3d 344, 2002-Ohio-2334, 767 N.E.2d 1146, at ¶ 18, motion for reconsideration denied, 96 Ohio St.3d 1455, 2002-Ohio-3819,772 N.E.2d 126.
[7] Id.
[8] Case v. Norfolk and Western Ry. Co. (1988), 59 Ohio App.3d 11,16, 570 N.E.2d 1132.
[9] Bloom v. Leech (1930), 120 Ohio St. 239, 242-243, 166 N.E. 137;Allen v. Benefiel (Sept. 30, 1999), 10th Dist. No. 99AP-90 (the passenger's actions in encouraging the driver to drink, in giving her directions, and in asking her to stop at a bar were insufficient to establish a joint enterprise).
[10] Bloom, supra, at 245-246, quoting Bryant v. Pac. Elec. Ry. Co.
(1917), 174 Cal. 737, 164 P. 385.
[11] (Oct. 11, 1978), 1st Dist. No. CA77-07-0089.
[12] Id.
[13] See, e.g., State v. Carter (Aug. 15, 1989), 2nd Dist. No. 2530 (one of numerous participants in criminal-damaging offense could be held liable for entire amount of restitution); State v. Schrickel (Sept. 19, 1997), 6th Dist. No. WD-96-060 (person convicted of receiving stolen property was properly held liable in restitution for damage to automobiles even though he did not personally damage the vehicles from which items were stolen).