# ATWOOD v. UTAH LIGHT & RAILWAY COMPANY.

No. 2560.   Decided April 23, 1914 (140 Pac. 137).

1. NEGLIGENCE—IMPUTED NEGLIGENCE—DRIVER OF VEHICLE—INJURY
   TO INVITEE.  Where plaintiff was injured while riding as the
   guest of L., who was driving, L.'s negligence, if any, was not
   imputable to plaintiff, she having no reason to believe that he
   was other than a careful and competent driver, but she was
   liable only for the results of her own negligence.[1]   (Page 371.)

---

[1] Lockhead v. Jensen, 42 Utah, 99, 129 Pac. 347.

2. STREET RAILROADS—INJURIES TO TRAVELERS—COLLISION—NEGLI-
GENCE. While plaintiff and her sister were riding in a single-
seated rig as the guests of L., he drove across one of defendant's
street railway tracks in order that he might get one of his
horses farther away from passing cars and prevent him from
shying, as he had previously done when a car passed. A car
approached from the rear with considerable noise and at high
speed, and, just as it was about to pass, the horse became
frightened from some cause and, with his head down, crowded
his mate toward the car and so near the track that the front
post of the car, while missing the buggy, struck the horse
nearest it, threw him down, and upset the buggy, throwing
plaintiff out and injuring her. *Held*, that plaintiff, as a matter
of law, was not negligent, and that the court's failure to submit
the question of her negligence to the jury was not error.
(Page 375.)

3. DAMAGES—PERSONAL INJURIES—EARNING CAPACITY — PLEADING.
Where plaintiff's injuries were fully described in her complaint
and were of such a nature and extent as to necessarily deprive
her from following her usual vocation for a time, the court
properly authorized the jury to award damages for injury
to her ability to earn a living and to acquire money or other
property, though impairment of her earning capacity was not
pleaded as such. (Page 376.)

APPEAL from District Court, Third District; *Hon. T. D. Lewis*, Judge.

Action by Ione Atwood against Utah Light & Railway Company.

Judgment for Plaintiff. Defendant appeals.

AFFIRMED.

*P. L. Williams, George H. Smith* and *H. B. Thompson* for appellant.

*Powers, Marioneaux, Stott & McKinney* for respondent.

FRICK, J.

The plaintiff brought this action to recover damages for personal injuries which she claimed were sustained through the alleged negligence of the defendant. The plaintiff, an

unmarried woman of thirty-six years of age at the time of the accident, was riding in a topless single-seated buggy with one Samuel J. Lindsay, thirty years of age, and with her sister. They were driving north on State Street and south of the corporate limits of Salt Lake City on the evening of June 14, 1912, between eight and nine o'clock. The horses were owned by Mr. Lindsay and were hitched to the buggy, and he was driving them. Mr. Lindsay, it appears, was a capable driver, having had much experience in driving and handling horses. All three were sitting on the one seat, the two women on the seat proper, while Mr. Lindsay "was sitting on the girls' knees." State Street is macadamized for several miles south of the city limits, and at the time of the accident the defendant had laid a one-track street car line which it operated by moving cars thereon between Salt Lake City and Murray, which is some five or six miles distant from the southern limits of Salt Lake City. Lindsay was driving north on the east side of the car track until after he had met and passed a street car which was running south. As this car approached the team, the horse nearest the car shied at the approaching and passing car, and after it had passed the buggy Lindsay drove across to the west side of the car track. The car track was laid to the east of the center of State Street, so that the traveled portion of the street on the east side of the track was about eighteen or twenty feet, while the roadway west of the track was approximately forty feet wide. The north-bound travel on the street was, as a general thing, on the east side of the track, while the vehicles going south proceeded on the west side thereof. Immediately after the car going south had passed Lindsay, he noticed a car coming from the south. This car, however, was still some distance to the south, and Mr. Lindsay testified that he drove across to the west side of the street because the horse hitched on the west side had shown a disposition to shy at the street car, and hence he wanted to place the other horse, which was not afraid of street cars, between the car coming north and the horse that had shied, with the view of preventing the horse from shying again. He was driving on a

sharp trot parallel with the street car track and some few feet distant therefrom when the street car was about to overtake him. The occupants of the buggy say the street car was being operated at a fast rate of speed, and, when still some distance to the south, the motorman blew the whistle and afterwards sounded the bell or gong from time to time as the car approached nearer the buggy. Just before the street car was about to pass the horses and buggy, the horse on the west side seemed to become frightened for some cause, and, with his head down, crowded the horse on the east side over towards and so near the track that the front post of the street car, while missing the buggy, nevertheless struck the horse on the east side, knocking him down, which caused the buggy to upset, and Lindsay fell out of the buggy, and the plaintiff was likewise thrown therefrom and from the fall sustained the injuries complained of. Plaintiff was riding on the west side of the buggy seat; her sister on the east; and Lindsay was sitting on their knees, as before stated. There was nothing that prevented Mr. Lindsay from driving farther to the west on the west side of the street. It seems the women were without fear, and apparently had no thought that there was any danger in driving along as they did, except such as might arise in case Lindsay drove too near the street car track. Both women were out driving with Mr. Lindsay upon his invitation, and merely for pleasure. Defendant also proved that immediately after the accident Mr. Lindsay had said that a dog running from the west towards the team had frightened the near horse. While Mr. Lindsay did not admit the statement in that form, he nevertheless did admit that he said at the time that he thought it might have been a dog that frightened the horse, because he did not think that the street car could have done it; but he said he did not know it was a dog. The motorman also testified on behalf of the defendant, and in his testimony said that he saw the team and buggy driving ahead of the car all the time after they had crossed the street car track; that the street car was running about twenty miles an hour; that the team and

44 Utah 24

buggy were always a safe distance from the track until just a moment before the car struck the horse, when it seemed to him that the team suddenly swerved to the east towards the track, but that it was done so quickly that he could not stop the car in time to prevent the collision with the horse.

Upon substantially the foregoing facts the jury returned a verdict for the plaintiff, upon which judgment was duly entered; and from which defendant appeals.

The court charged the jury upon the question of plaintiff's negligence as follows:

"You are instructed that the plaintiff in this case is not responsible for the acts of negligence of Lindsay, the driver, if any you find him guilty of, and, if plaintiff sustained an injury by means of a collision between Lindsay's carriage and the street car, she may recover damages from any party by whose fault or neglect the injury occurred. The negligence of the driver of the carriage in which plaintiff was riding will not prevent her from recovering damages against the street car company if the defendant company was also negligent and such negligence proximately contributed to her injury. You are instructed that there is no evidence in this case of any negligence on the part of the plaintiff."

The court, in another paragraph, also, in different phraseology, practically expressed the same thought.

Appellant excepted to all of the foregoing charge and now insists that the court erred in stating the law. Appellant contends that, under the evidence, Mr. Lindsay was guilty of negligence, and it is insisted that, under the circumstances of this case, his negligence was imputable to respondent. It is further contended that, although Lindsay's negligence be not imputable to respondent, she nevertheless was also guilty of negligence. In this connection it is contended that, if her conduct did not constitute negligence as matter of law, it nevertheless was such that it should have been submitted to the jury, and it was for them, and not for the court, to say whether she was guilty of negligence or not.

In view of the relationship existing between Mr. Lindsay, the driver of the team and buggy, and the respondent at the

time of the accident, the doctrine of imputed negligence, in our judgment, has no application in this case. The case of *Lochhead v. Jensen,* 42 Utah, 99, 129 Pac. 347, decided by this court in December, 1912, is, we think, in principle not distinguishable from the case at bar. That was a case where one person, upon invitation of another, was riding in the latter's automobile, and, while so riding, the automobile was overturned, and the invitee was killed. We held, in the absence of evidence to show that the deceased had exercised any control over or direction of the operation or handling of the automobile, or consented to, or acquiesced in the manner of its operation, the negligence of the driver could not be imputed to the deceased. True, in that case the deceased was riding in the rear seat, but it was shown that the automobile was an open one, and we cannot see how, under the evidence, it would have made any difference if he had actually been sitting in the front seat with the driver. While in this country the courts are practically unanimous in repudiating the doctrine of imputed negligence as it was first declared in England, except in a particular class of cases to be noted hereafter, yet, notwithstanding the repudiation of the doctrine, there is considerable diversity of opinion with regard to the precise duties that are imposed upon the person who is riding in the vehicle or conveyance of another in case of danger, and also with regard to when a particular relationship of the parties may make the doctrine applicable in a particular case.

Counsel for appellant have cited numerous cases emanating from courts of last resort of many jurisdictions, including many federal cases, in which the variant views of the courts are reflected. We cannot take time to review those cases here. It must suffice to say that we have carefully examined them, and, after doing so, we are still of the opinion that the law is correctly stated by Mr. Justice Straup in *Lochhead v. Jensen, supra.* We shall, however, refer to one case, namely, *Cotton v. Willmar & S. F. Ry. Co.,* 99 Minn. 366, 109 N. W. 835, 8 L. R. A. (N. S.)

643, 116 Am. St. Rep. 422, 9 Ann. Cas. 935. We do this because, in our judgment, the prevailing modern view of the courts upon the subject is clearly stated by the Supreme Court of Minnesota. It is there said:

"One group of cases charges the passenger with the absolute duty of keeping a lookout for his own safety, and does not permit him to trust to the care of the driver, while another allows him to rely upon a driver, whom he believes to be careful and competent, without being subject to the implication of negligence. (2 Thompson, Neg. sec. 1621, and cases there cited.) But the rule which has met with general approval in the more recent cases makes the passenger responsible only for his personal negligence, and leaves it to the jury to determine whether, under the circumstances, he was justified in trusting his safety to the care of the driver and not looking and listening for himself. The negligence of the driver is thus not imputed to the guest or passenger, but the circumstances may be such as to make it the duty of the passenger to look and listen and attempt to control the driver for his own protection. The passenger is thus held responsible for his own negligence but not for the negligence of the driver. He must exercise due care and caution, and, if his negligence contributes approximately to the accident, he cannot recover damages."

Many cases are cited in support of the text. After pursuing the subject further in the same strain, the court also takes up the question of the relationship of the parties. Upon that subject it is said:

"The appellant contends that the court erroneously instructed the jury as to the relation which existed between the respondent and the driver. The rule that the driver's negligence is not imputable to a person who is being carried in a vehicle is only applicable in cases where the relation of master and servant or principal and agent does not exist. . . . (Citing cases.) So, where the parties are engaged in a joint enterprise or in a common employment, the negligence of one is imputable to all."

The court then quotes and adopts the language used in another case as follows:

"Parties cannot be said to be engaged in a joint enterprise, within the meaning of the law of negligence, unless there be a community of interest in the objects or purposes of the undertaking, and *an equal right to direct and govern the movements and conduct of each other with respect thereto. Each must have some voice and right to be heard in its control and management.*" (Italics ours.)

See *Cunningham v. City of Thief River Falls,* 84 Minn. 27, 86 N. W. 763.

Upon the general proposition, see 33 Cyc. 1015, where the rule is as well stated as it can be in view of the diversity of opinions and in making a very general statement of the law. We call especial attention to the italicized portion of the foregoing quotation, because in many of the cases the conditions contained therein, or at least some of them, are either overlooked or ignored. Such is the fact in many of the cases cited by appellant's counsel. As we have seen from *Lochhead v. Jensen,* those conditions have now become a part of the law of negligence in this jurisdiction. The equity and utility involved in the application of those conditions to cases like the one at bar must be apparent to all, and hence no further discussion is required. By overlooking or ignoring those conditions, or at least some of them, some of the courts have been led to apply the essence of the obsolete doctrine of imputed negligence in some concrete instances when the same courts by their words have repudiated the doctrine *in toto.* For example, it is held in some of the cases that, when A. invites B. to take a ride in a vehicle under the control of and driven or directed by A., nevertheless, if B. suffers injury through A.'s negligence, the latter's negligence is imputed to B., unless B. by some affirmative act attempted to avoid the accident. Those cases, in our judgment, go too far, since they impose the same duty on B., who has no control or direction over the vehicle, as they do upon A., who owns, controls, and, at the time, directs the same. It no doubt is the law, as contended by appellant's counsel, that every occupant of a vehicle, in which he is riding, must always exercise ordinary care for his own safety, and if, by the exercise of such care, he could avoid injury to himself, but fails to do so, he cannot recover, regardless of the fact that he had no control or direction of the vehicle in which he was riding at the time of the accident and injury. But, as has been well stated by the Supreme Court of Minnesota in *Howe v. Minneapolis, etc., Ry. Co.,*

·62 Minn. 71, 64 N. W. 102, 30 L. R. A. 684, 54 Am. St. Rep. 616,

"we think that it would hardly occur to a man of ordinary prudence, when riding as a passenger with a competent driver, who he had no reason to suppose was neglecting his duty, that he was required, when approaching a railway crossing, to exercise the .same degree of vigilance in looking and listening for approaching trains that he would if he himself had the control and management of the team."

This seems to us good sense as well as good law. Of course every one who may be riding in a vehicle, whether as passenger, invitee, or otherwise, must always exercise ordinary care and prudence to avoid injury to himself, and to that end, in case of imminent danger, must leave the vehicle in case such a course is practical and necessary to avoid injury. Again, he may not sit silently by and permit the driver of the vehicle to encounter or enter into open danger without protest or remonstrance and take the chances, and, if injured, seek to recover damages from the driver of the vehicle or from the one whose negligence concurred with that of the driver's, or from both. We, however, have no such case here. Under the evidence, we cannot see how respondent, by the exercise of any reasonable prudence or foresight, could have avoided either the accident or the injury to herself. But, as already intimated, counsel for appellant strenuously insist that it was for the jury to say whether, in view of all the circumstances, respondent did exercise that degree of prudence and care which the law imposed upon her. It may be conceded that ordinarily, where an accident occurs and injury results, the question of whether the injured person has or has not exercised the degree of care imposed by law is one of fact to be determined by the jury. It is, however, equally true, that where the facts are not disputed, and are of such a character that reasonable minds can arrive at but one conclusion, then it is the duty of the court to declare such conclusion as a matter of law. The doctrine has so often been declared in this jurisdiction that it is not necessary to refer to the cases again.

The facts here are not disputed at least not with regard to respondent's conduct. Now, what was there in her conduct from which a jury, or anybody else, would be justified to find that anything she did or omitted to do was the proximate cause of, or directly contributed to, the accident and consequent injury? Indeed, if the question of appellant's negligence were before us for review, we would hardly know how to decide. While that question is not before us, and while we express no opinion on it one way or the other, yet we have no hesitancy in saying that the question, to say the least, is not free from doubt. While, therefore, there may be doubt with regard to appellant's as well as Mr. Lindsay's negligence, and while, as to their conduct, it may have been perfectly proper to submit the question of negligence to the jury as a question of fact, yet we can see no reason whatever why, under the undisputed evidence, respondent's conduct should likewise have been submitted to the jury. In that regard we think the case comes directly within the principle laid down in *Lochhead v. Jensen,* where we held that the question of the negligence of the deceased, who was riding in the rear seat of the automobile was properly withheld from the jury. Upon principle, respondent's relation to Mr. Lindsay is no different than was the relation of the deceased to the driver of the automobile referred to in *Lochhead v. Jensen.* So far as the evidence discloses, respondent had no control over the buggy, nor any power to direct either the team or Mr. Lindsay; nor is there anything in the evidence from which any one can say that, under the circumstances she did not act with reasonable care and prudence. As a matter of course, in cases like the one at bar, the trial courts should ordinarily submit the question of negligence to the jury; and such should be done in all cases when there is any substantial evidence upon which a finding of negligence can be based. Where, however, as here, there is no such evidence, the question must be determined as one of law and not of fact. We remark that it is not our purpose in this case to lay down any rule with respect to when and under what circumstances

the relation of parties is such that the negligence of one may be imputed to the other. Indeed, it is our purpose not to do so. The only reason we had in view in saying what we have was to make clear that the case at bar does not come within the doctrine of imputed negligence. That is all we can or do decide in this case upon that phase of it. We however, further hold that, under the undisputed evidence, respondent, as matter of law, was not guilty of negligence, and hence the trial court did not err in charging the jury as it did.

It is further contended that the court erred in charging the jury that, in the event they found for respondent, they should take into consideration "the probable effect of her injury upon her ability to earn a living and to acquire money or other property." It is contended that no such issue was presented by the pleadings. The injuries sustained by respondent were, however, fully described in her **3** complaint, and from their nature and extent it was apparent to any one that the injuries described would necessarily, for some time at least, deprive respondent from following her usual vocation and thus affect her ability to earn money, etc. Under such circumstances it is not necessary to specially allege that the injured person's ability to earn money was impaired. The general rule is correctly stated in 13 Cyc. 187, in the following words:

"Where the injury alleged will necessarily render a person less capable of performing his usual business duties in the future, proof of the impairment of his general earning capacity may ordinarily be given under the general allegation of the injury, and damages resulting therefrom, such as the inability to attend to his ordinary business, without a special averment that plaintiff will be unable to earn as much in the future as in the past, or without specially averring the nature of his occupation or employment, although a few courts seem to require a greater strictness and definiteness in the allegation."

We are clearly of the opinion that the district court committed no error in its charge to the jury.

The judgment is affirmed, with costs to respondent.

McCARTY, C. J., and STRAUP, J., concur.