[Civ. No. 23246. Second Dist., Div. One. Dec. 16, 1958.]

JOYCE JONES, Individually and as Guardian, etc., Appellant, v. BIRDIE MARGARET REITH, Respondent.

Jack R. Berger for Appellant.

Jarrett & Morgan and William Marshall Morgan for Respondent.

FOURT, J.—This is an appeal from a judgment entered upon a verdict for the defendant and against the plaintiff in an action for damages resulting from the death of Aubrey Jones, caused by injuries sustained by him arising out of an automobile collision.

Appellant is the widow of Aubrey Jones and filed the action against the defendant in her individual capacity and as guardian ad litem for her minor daughter. The defendant filed an answer and thereafter her motion to consolidate this cause with the trial of the cause of action of Arthur Frank, the driver of the vehicle in which the deceased was riding at the time of the accident, was granted.

A résumé of the facts is as follows: On or about April 6, 1955, a collision occurred between the Frank automobile and that of the defendant at or near the intersection of Sepulveda Boulevard and Roxford Street in Los Angeles, and as a result of the injuries sustained in such accident Aubrey Jones died.

Roxford Street runs generally east and west and intersects and terminates at Sepulveda Boulevard which runs generally north and south. The evidence disclosed that Jones was riding with Frank, who was operating his own vehicle, a 1948 Chrysler convertible in a southerly direction on Sepulveda Boulevard as they were returning to Los Angeles from a trip into the Lancaster area. The defendant had been operating her vehicle, a 1949 Mercury sedan, in a westerly direction on Roxford Street, before turning left onto Sepulveda Boulevard. She then proceeded in substantially the same direction as the Frank car was traveling. After traveling some distance beyond the intersection, the defendant's car was struck from the rear by the Frank car, with the result that both automobiles left the highway.

Sepulveda Boulevard, at the time and place of the accident, consisted of three lanes. There was a stop sign on Roxford Street near the intersection in question. Traffic was light, visibility was good and the area was substantially open country. There was a sharp conflict in the evidence as to whether the impact occurred in the center lane or the westerly lane of Sepulveda Boulevard.

Frank, the driver of the car in which Jones, the deceased, was riding, testified at the trial that he and Jones had met about 10:30 o'clock in the morning of the day of the accident at the Jones residence in Rivera, and that such meeting was not by prearrangement. The two apparently decided to go hunting in the Lancaster area. Jones had a couple of calls to make to repair some refrigerator equipment some place along the way between the home of Jones and the place where the two intended to hunt. Jones made the call or calls and performed whatever work was to be done. No part of the com-

pensation from such work or jobs, if any, was paid to Frank, nor was there any agreement to pay Frank any compensation from said work. In Frank's deposition the following questions were asked and answers were made:

"Q. And what were you doing up there? A. Oh, business and pleasure trip. Does that describe the trip, sir? A. I guess so."

He testified further that the business of repairing the refrigerator equipment was entirely that of Jones and not his. Frank was vague and extremely indefinite as to where any such work was done, or where any stop or stops were made. Likewise he was vague and indefinite as to what route was followed to the Lancaster area on the day in question. He did not recall whether Jones had directed the route that they had taken from the Jones home to the first stop of the day where Jones was to do some work.

In his deposition the question was put:

"Q. And had you planned on some particular place that you were going to on that particular day?" and he answered, "Just to make a couple of calls with him, and possibly go up around Lancaster."

Frank also testified that he was not familiar with the area where Jones was going to make the call or calls and that Jones had assisted him as far as directions were concerned, that Jones knew where he was going and that as far as the first call was concerned Jones did the directing as to how to get there.

There was no sharing of any expenses between Jones and Frank, nor was there any reimbursement or payment of any kind to Frank by Jones.

After hunting in the Lancaster area the men started to return to Los Angeles. Frank drove the automobile all of the time and Jones did not give any directions whatsoever as to the route to be followed on the return trip. A stop was made on the return trip and gasoline was purchased and Frank paid the charges therefor.

Frank apparently had nothing to do with the refrigerator equipment repairs and received no money therefor, nor did he have any business or other dealings with any of the people who had refrigerator equipment to be repaired.

The appellant contends that the court committed prejudicial error (1) by giving instructions on contributory negligence; (2) by giving instructions on joint venture and imputed negligence, and (3) by giving BAJI Number 131 (The mere fact

that an accident happened, considered alone, does not support an inference that some party, or any party, to this action was negligent).

Appellant insists that in the present case the defendant did not plead, as an affirmative defense, the contributory negligence of the deceased. The judge instructed the jury as to what constitutes contributory negligence, and the law with reference to the burden of establishing such contributory negligence.

The court also instructed that if contributory negligence existed, it would have consisted of negligence on the part of Frank, the driver of the car in which the deceased was riding, and then went on to state, ''and if you further find that the said Arthur Frank and the deceased were engaged in a joint venture, the contributory negligence of Arthur Frank would be imputed to the deceased. If you further find that this negligence contributed as a proximate cause to his death, then the heirs of the deceased may not recover from other person for that death.''

The court also gave BAJI Instruction Number 210-E, the last paragraph of which reads as follows: ''To thus impute the negligence, if any, of the driver to the deceased, who was riding in the vehicle at the time of the accident, you must find from the evidence either that the said deceased and the driver were then in joint or common possession and control of the automobile, with the two having equal rights to be heard in its control and management, *or that the driver was then acting as the agent of the deceased and within the scope of his employment.*'' (Emphasis added.) The record does not even disclose a claim by the defendant that Frank was the agent of Jones and that he was driving the car as a part of his employment by Jones, let alone any evidence to that effect.

The matter of whether the court should have instructed the jury upon the matter of joint adventure creates a difficult problem. Normally it is a matter for the jury to decide whether a joint adventure existed. In any event, there must be some evidence which, if true, would establish a joint adventure under the law before the court can give an instruction thereon.

For the purposes of this case, it must be admitted that Frank had the actual control of his automobile—he was the driver of the same and he was in charge of it mechanically. There is no contention that the relationship of master and servant,

or principal and agent, or employer and employee existed between the two men, nor was there any family relationship between them. There was no mutual financial interest, and a reading of the record discloses no evidence of any fact which might show, or tend to show, that Frank exercised, or attempted to exercise any control over Jones in what he was doing in the discharge of his work of repairing refrigerator equipment, or otherwise, and there is nothing to show that Frank had the power to exercise any control over Jones in anything Jones did or was to do. In short, Frank had no voice in any matter of Jones'. They were not partners and there was no relationship between them of any kindred identity.

In the case of *Bryant* v. *Pacific Electric Ry. Co.*, 174 Cal. 737, the court said at pages 739-741 [164 P. 385]:

"This court has but recently reiterated the well-settled rule that a guest or passenger in a vehicle driven or operated by another, is not, ordinarily, bound by the negligence of the driver or operator. (*Parmenter* v. *McDougall*, 172 Cal. 306 [156 P. 460]. . . .) In that case the negligence of a person operating a motorcycle was held not to be imputed as matter of law to his brother who was riding as his guest on the rear seat. . . . The family relation, or the business association, therefore, does not of itself identify the plaintiff with the driver so as to impute to him the latter's alleged contributory negligence.

"The rule is otherwise, however, if the occupant of the machine exercised control over the driver thereof, or, in the eyes of the law, may be said to possess such power of control. Illustrations of the application of this doctrine are found in cases where the parties are engaged in a common or joint enterprise. Ruling Case Law, after referring to the different rules as to whether negligence may be imputed to a guest or passenger in an automobile, says: 'There seems to be no difference of opinion as to the rule that when two persons are engaged in a joint enterprise in the use of an automobile, the contributory negligence of one will bar a recovery by either, if it is in a matter within the scope of the joint undertaking.' (Vol. 2, p. 1208, § 43.) But in order that there be such a joint undertaking it is not sufficient merely that the passenger or occupant of the *machine indicate to the driver or chauffeur the route he may wish to travel, or the places to which he wishes to go, even though in this respect there exists between them a common enterprise of riding together.* The circumstances must be such as to show that the occupant and the

driver together had such control and direction over the automobile as to be practically in the joint or common possession of it. ■ 'Parties cannot be said to be engaged in a joint enterprise, within the meaning of the law of negligence, unless there be a community of interest in the objects or purposes of the undertaking, and *an equal right to direct and govern the movements* and conduct of each other with respect thereto. Each must have some voice and right to be heard in its control and management.' (Citing cases.)'' (Emphasis added.)

■ In *Pope* v. *Halpern* (1924), 193 Cal. 168 [223 P. 470], the court said (at pp. 173-175):

''The rule is well established that the contributory negligence of the driver of a vehicle is not ordinarily imputable to his passenger or guest (citing cases). But an exception to this rule is made in those cases where the parties are engaged in a common or joint enterprise, and in such cases it is held that the contributory negligence of one will bar recovery by either. The decisions are not in accord as to what constitutes a joint or common enterprise, but it has been held in this state that the passenger must exercise some control over the driver, or, in law, may be said to possess the right of such control, before it will be held that they are engaged in a joint enterprise. (Citing case.) In *St. Louis etc. Ry. Co.* v. *Bell*, 58 Okla. 84 [L.R.A. 1917A 543, 159 P. 336], the court said: ' ''Parties cannot be said to be engaged in a joint enterprise, within the meaning of the law of negligence, unless there be a community of interests in the objects or purposes of the undertaking, and an equal right to direct and govern the movements and conduct of each other with respect thereto. Each must have some voice and right to be heard in its control and management.'' ' It will be seen from these two decisions that in order that there be such a joint enterprise it is not sufficient merely that the passenger of the machine indicate the route, or that both parties have certain plans in common, such as a 'joy ride,' but the community of interest be such that the passenger is entitled to be heard in the control and management of the vehicle. In *Bryant* v. *Pacific Electric Ry. Co.*, *supra*, the court, after referring to the case of *Wentworth* v. *Town of Waterbury*, 90 Vt. 60 [96 A. 334], where apparently the only basis for the imputation of negligence of the driver of an automobile to the plaintiff was the circumstance that they were both engaged in the common purpose of taking two ladies for an afternoon's

drive to view a lake, said: 'In our opinion, the doctrine of imputable negligence should not be so loosely applied. To do so leaves the law in an uncertain state. The better view is expressed by *Nonn* v. *Chicago City Ry. Co.*, 232 Ill. 378 [122 Am.St.Rep. 114, 83 N.E. 924] : "There can be no such thing as imputable negligence, except in those cases where such a relation exists as that of master and servant or of principal and agent. In order that the negligence of one person may be properly imputed to another they must stand in such relation of privity that the maxim *qui facit per alium facit per se* directly applies." Indeed, no other rule is consistent with section 1714 of the Civil Code, wherein it is declared that every one is responsible for an injury occasioned to another by his want of ordinary care "except so far as the latter has, willfully or by want of ordinary care, *brought the injury upon himself.*" ' (Italics ours.)"

█ In the present case, as in the Pope case, the decedent did not have any proprietary interest in the automobile the two men were riding in as would give him a right to be heard in its management, and there is no evidence that he did actually exercise any control at any time.

█ In *Campagna* v. *Market St. Ry. Co.* (1944), 24 Cal.2d 304 [149 P.2d 281], the court said (at pp. 308-309):

"When two occupants of a vehicle are engaged in a joint venture or enterprise with respect to its operation, the negligence of the driver is imputable to his companion. But to constitute such a relationship, the parties must have a community of interest in a joint or common undertaking, each exercising or having the right to exercise equal or joint control and direction. (Citing cases.). █ The relationship of joint venturers is that of a mutual agency, akin to a limited partnership. (Citing cases.) █ It is founded on contract; and the acts of the parties over a period of time may be sufficient to raise an implied agreement of joint enterprise. (Citing case.) █ Although a joint venture generally contemplates an equal sharing of the profits and losses in the prosecution of the common purpose (2 Rowley's Modern Law of Partnership, § 975; 33 C.J. 841, § 2), the division may be left to the agreement of the parties. (Citing case.)

█ "The doctrine of imputed negligence is not to be loosely applied, and 'when there is nothing in common between the passenger and driver of the vehicle except a common destination and a common purpose in going there, the negligence of the driver is not to be imputed to the passenger. (Citing case.)

The passenger must do more than to indicate the route to be traveled, and a certain plan in common is not sufficient to establish the relationship. (Citing case.)

"Neither family relationship between the parties, nor association together in business, is determinative of the question. (Citing cases.) And as the imputation of contributory negligence is an affirmative defense, the defendant has the burden of proof upon that issue. (Citing cases.)"

In *Roberts* v. *Craig* (1954), 124 Cal.App.2d 202 [268 P.2d 500, 43 A.L.R.2d 1146], the court said (at pp. 208-209):

". . . The negligence of one person is not imputed to another nonparticipant except in the clearest of cases and where the interests of justice demand it. The fundamental rule is that one person, himself free from fault, shall not be required to bear the consequences of the actions of another. Vicarious liability is the exception.

"It is only where a person actually acts through another to accomplish his own ends that the law will or should impose such vicarious liability. Right of control over the other person is a test of the required relationship, but it is not itself the justification for imposing liability. Aside from such legal relationships as master and servant, principal and agent, etc., before the courts will find that the parties were joint adventurers there must be clear evidence of a community of interest in a common undertaking in which each participant has or exercises the right of equal or joint control and direction. (Citing cases.) A joint venture is a sort of mutual agency, akin to a limited partnership. (Citing cases.) It is not sufficient that the parties have certain plans in common, but the community of interest must be such that the passenger is entitled to be heard in the control of the vehicle. (Citing cases.) Most of the cases indicate that the common interest must be of some business nature. (20 Minn. L.Rev. 401, 404; 16 Cornell L.Q. 320.)

. . . . . . . . . . . . . . .

". . . If the parties are joint adventurers, the right to control becomes of legal significance. If they are not so engaged the mere right to control which is not exercised is not sufficient to create the vicarious liability."

In *Flores* v. *Brown* (1952), 39 Cal.2d 622 [248 P.2d 922], the court said (at pp. 628-629):

". . . On the other hand, it is settled that if one person is riding in another's automobile, the right to control may not be inferred merely because the trip is undertaken for the passen-

ger's benefit and the destination is selected by him. (Citing cases.) Similarly, the right to control may not be inferred merely from the fact that one person with his own equipment is transporting another's goods. (Citing cases.)''

In *Edwards* v. *Freeman* (1949), 34 Cal.2d 589 [212 P.2d 883], the court said (at pp. 591-593):

''To permit a finding of agency upon this evidence would be, in effect, to hold that one who performs a mere favor for another, without being subject to any legal duty of service and without assenting to any right of control, can be an agent. This is not the law. 'Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.' (Restatement, Agency, § 1.) 'The principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on his behalf and subject to his control.' (*Id.*, comment on subsec. 1.) ██ In the absence of the essential characteristic of the right of control, there is no true agency and, therefore, no 'imputation' of the driver's negligence to the passenger. (Citing cases.) . . . And, as said in the Marchetti case, *supra,* (204 Cal., at page 681 [269 P. 529]): 'The negligence of the driver of a machine . . . cannot be imputed to a passenger therein in the absence of any evidence showing that the latter exercised some control over the driver or that he possessed the power to supervise or direct the manner in which the automobile should be operated. . . .'

''A case quite similar to the one at bar is *De Soto* v. *Pacific Electric Ry. Co.* (1920), 49 Cal.App. 285, 286, 288 [193 P. 270]. . . . From the opinion it appears that (p. 286) 'plaintiff on the night of the accident was riding in an automobile belonging to her brother-in-law, whom she had requested to convey her, as a matter of friendly accommodation, to a nearby store. She exercised no control over the driver of the machine other than to indicate the place to which she desired to be transported. Under these conditions the journey was made to the store, and it was upon the return therefrom that the accident happened.' It was held that as a matter of law (p. 288) 'under the relationship shown to exist between the plaintiff and the driver . . . the facts were undisputed and a conclusion irresistibly indicated that no responsibility was fixed upon the appellant [plaintiff] for any act of negligence committed by the driver. . . .' (See also *Bryant* v. *Pacific*

*Electric Ry. Co.* (1917), 174 Cal. 737, 739-740 [164 P. 385]; *Irwin* v. *Golden State Auto Tour Corp.* (1918), 178 Cal. 10, 14 [171 P. 1059].)"

In *Atwood* v. *Utah Light & Ry. Co.*, 44 Utah 366 [140 P. 137], the court, quoting with approval from *Cotton* v. *Willmar & S. F. Ry. Co.*, 99 Minn. 366 [109 N.W. 835], said (at p. 139 [140 P.]) : " 'Parties cannot be said to be engaged in a joint enterprise, within the meaning of the law of negligence, unless there be a community of interest in the objects or purposes of the undertaking, and *an equal right to direct and govern the movements and conduct of each other with respect thereto. Each must have some voice and right to be heard in its control and management.*' (Italics ours.)"

 Tested by the rules of law above set forth, it is plain that in the present case there was no control by Jones over Frank in the operation of Frank's vehicle, and there is no evidence that he had any right to so control the operations of the automobile.

It was appropriately stated in *Anthony* v. *Kiefner*, 96 Kan. 194 [150 P. 524, at p. 525], "The doctrine of imputable negligence, except when countenanced by statute, is a fiction of the law which finds small favor with the courts. . . ."

The question, reduced to its simplest terms, is whether Jones had the legal right and authority, and therefore the correlative duty and responsibility to direct the driving of the automobile by Frank. We think that there are essential facts which are necessary to establish a joint venture which are not present in this case, and therefore the instructions on joint venture should not have been given under the circumstances.

The record is bare of any fact which might show that Jones interfered with or controlled in anywise the automobile in causing the injury or otherwise. Perhaps it is true that Jones did tell Frank where he, Jones, wanted to go, but that, under the circumstances present in this case, is not sufficient to establish a joint venture.

In *Mantonya* v. *Bratlie*, 33 Cal.2d 120 [199 P.2d 677], our Supreme Court stated (at pp. 124-125) : "The task of a jury of laymen to comprehend and apply pertinent instructions is onerous enough at best; it should not be unnecessarily aggravated by loading on them a congeries of wholly inapplicable legal propositions. Such wholly inapplicable propositions should not be requested by counsel, in the first place, but if requested, it is the duty of the trial judge to scrupulously delete them from the charge finally given."

It is unnecessary to consider the other contentions of appellant as the case should be retried.

The judgment is reversed.

White, P. J., and Lillie, J., concurred.